Robert LINCOLN, Respondent,

v.

RAILWAY EXPRESS AGENCY, INC., and Edward L. Gruenewald, Appellants.

No. 48894.

Supreme Court of Missouri,

Division No. 1.

July 16, 1962.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 10, 1962.

Gentry, Bryant & Sheppard, Arnot L. Sheppard, St. Louis, for appellants.

Gerard M. Dorsey, Dorsey & Aulbert and William L. Mason, Jr., St. Louis, for respondent.

HOUSER, Commissioner.

Action for damages for personal injuries arising out of a vehicular collision. Robert Lincoln recovered judgment for $20,000 against Railway Express Agency, Inc., and its truck driver Edward L. Gruenewald. Both defendants appealed.

Plaintiff was driving an eastbound taxicab in St. Louis County on St. Charles Rock Road, a six-lane concrete roadway divided by a median strip. The cab and an eastbound panel truck owned by the agency and driven by Gruenewald collided when the truck turned left in attempting to make a U-turn at the Ridgeway Avenue

crossover. The three eastbound lanes will be referred to as follows: The lane nearest the median strip, Lane 1 (15 feet wide); the center lane, Lane 2 (15 feet wide), and the outer or southernmost lane, Lane 3 (10 feet wide). Walton Road, which enters St. Charles Rock Road from the south, is 320 feet west of the Ridgeway crossover. On the south side of St. Charles Rock Road there are business buildings, with a macadamized private parking area in front of them.

Plaintiff's petition charged defendants with fifteen separate assignments of negligence, including failure to keep a lookout, suddenly turning to the left and into the path of the cab in close proximity thereto without giving a signal or warning, and failure to approach the intersection for a left turn in the lane or portion of the right half of the roadway nearest the center line thereof, in violation of statute. The answer was a general denial and a plea of contributory negligence in so driving and operating the cab as to cause, allow and permit the cab to collide with the left rear end of the truck.

*Plaintiff's version of the facts:* From the top of the incline to the point of collision (1500 feet, clear view) plaintiff drove the cab at 20–25 m. p. h., at no time checking his speed, at all times in Lane 1, with the left wheels of the cab a foot and a half south of the south edge of the median strip. Immediately after the cab crossed Walton Road plaintiff first saw the truck, then 150–160 feet east of the cab, just beginning to move from the private parking area onto Rock Road at 3, 4 or 5 m. p. h. One half or maybe three-fourths of the truck had crossed into Lane 3. The truck emerged on an angle from the parking area northeast into Lane 3, moved east maybe 20–25 feet in Lane 3, then crossed diagonally into Lane 2, and continued east in Lane 2 for a distance of 90 or 100 feet. When the truck reached Lane 2 the cab was 15, 20 or 25 feet west of the truck. The cab continued east in Lane 1 at 20–25 m. p. h. and the truck continued east in Lane 2 at a speed up to 15–20 m. p. h. The cab at no time passed the truck, but remained 10–20 feet behind the truck. Both vehicles were traveling in the middle part of their respective lanes. The truck did not move out of Lane 2 until it reached a point 10 to 20 feet west of the west side of the Ridgeway crossover, at which point the truck "all of a sudden" started turning left on about a 45-degree angle, headed northeast, moving from plaintiff's right to his left across plaintiff's path of travel, reaching a point "squarely in front" of the cab. No left-turn directional signals or manual signals were given by the truck driver. The east-west distance between cab and truck at that time was variously estimated by plaintiff at from 5 to 25 feet, and the north-south distance between them was approximately two feet. When plaintiff saw the truck make this turn plaintiff immediately took his foot off the accelerator and put it on the brake pedal. He did not know whether he depressed the brake pedal. The collision occurred. "It happened so quick." At that time the speed of the truck was 15–20 m. p. h. and the cab's speed was 20–25 m. p. h. At time of collision the front part of the truck was in the crossover and 10–15 feet of the back part of the truck was in Lane 1. The right front fender of the cab struck the truck on the left side behind the rear wheels, halfway between the left rear fender and the rear end of the truck. The cab was 16–17 feet long. The truck was 20–22 feet in length.

*Gruenewald's version of the facts:* He parked the car in Lane 3 and after making a delivery to one of the business buildings drove in low gear from the south curb of Rock Road, pulled away from the curb about a foot, looked out the left door for traffic and then for the first time saw the cab coming from the west, approximately 425 feet away. He did not determine the speed of the cab. The truck was in low gear, traveling 5 m. p. h. then. At no time

did Gruenewald change gears or reach a higher speed than 5 m. p. h. He proceeded to cross Lanes 3 and 2 into Lane 1, and went east in Lane 1. At no time after he saw the cab 425 feet away did Gruenewald ever again look to the west toward the cab as he was proceeding across the road to Lane 1, nor did he slow down his truck, or check his rearview mirrors to determine the location of the cab. The truck did not travel in Lane 2 at any time, except to cross over, but pulled into Lane 1 and continued straight east in Lane 1 approximately 100 to 150 feet—"a half a city block"—until it reached the crossover. As the truck proceeded east in Lane 1 the left wheels were approximately one foot away from the median strip. Gruenewald admitted he did not give any hand signal that he was going to make a U-turn. He claimed he turned on the directional lights, but did not know whether they went "on" or were working at the time.

Plaintiff went to the jury on two separate verdict-directing instructions. No. 1 . submitted a violation of § 304.018, subd. 1(2),[1] applicable portions of which provide: "1. The driver of a vehicle intending to turn at an intersection shall do so as follows: * * * (2) Approach for a left turn shall be made in the portion of the right half of the roadway nearest the center line thereof * * *." No. 2 submitted failure to keep a lookout and sudden turning in close proximity without signal or warning. On appeal defendants attack Instruction No. 1 on twelve different grounds, No. 2 on six grounds, and contend that the verdict is self-destructive.

### Instruction No. I

"The Court instructs the jury that under the law of Missouri there is imposed upon the driver of a motor vehicle who intends to turn his vehicle to the left at an intersection the duty to approach said intersection in the lane or portion of the right half of the roadway nearest the center line.

"The Court therefore further instructs you that if you find and believe from the evidence that on the occasion mentioned in the evidence, the plaintiff, Robert Lincoln, was operating an automobile eastwardly in the first traffic lane south of the median or center divider of St. Charles Rock Road at or near its intersection with Ridgeway Avenue, both open and public streets and highways in the City of St. John, St. Louis County, Missouri, if you so find, and if you further find that at said time and place, defendant Railway Express Agency, Inc., acting by and through its agent and servant, defendant, Edward L. Gruenewald, were operating a motor truck eastwardly in the second traffic lane south of the median or center divider of St. Charles Rock Road and to the right or south of the traffic lane occupied by the plaintiff and when they were at or near the aforesaid intersection they did turn their said motor truck to the left from said second traffic lane and into collision with the automobile operated by the plaintiff, if you so find, and, if you further find that the defendants, Railway Express Agency, Inc., and Edward L. Gruenewald, in approaching said intersection were intending to turn to the left and did fail to drive in the first lane or portion of the right half of the roadway nearest the center line thereof, but instead drove in the second traffic lane and to the left therefrom and into collision with the automobile operated by the plaintiff, then you are instructed that the defendant, Railway Express Agency, Inc., acting by and through its agent and servant, defendant Edward L. Gruenewald, were guilty of negligence; and, if you further find and believe that as a direct and proximate result of such negligence, if you so find, the motor truck so operated by the defendants Railway Express Agency, Inc., and Edward L. Gruenewald was caused to be brought

---

1. All section references are to RSMo1959, V.A.M.S.

into collision with the automobile with plaintiff therein, and that as a direct and proximate result of such collision, if you so find, the plaintiff, Robert Lincoln, was caused to be injured thereby, and if you further find that the plaintiff, Robert Lincoln, was at all times mentioned in the evidence exercising the highest degree of care in the operation of his said automobile, then you are instructed that the plaintiff is entitled to recover against the defendants, and your verdict should be in favor of the plaintiff, Robert Lincoln, and against both the defendant, Railway Express Agency, Inc., and against the defendant, Edward L. Gruenewald."

Appellants say the first paragraph of No. 1 injects error because it categorically postulates an unqualified duty and makes it negligence under any and all circumstances to fail to drive as therein required, whereas the rule of the road upon which it is based, § 304.018, subd. 1(2), does not confer absolute rights or create absolute duties but creates reciprocal duties which may be qualified by circumstances; that it was error to tell the jury that the violation of law in this respect invariably and unqualifiedly constitutes actionable negligence as a matter of law. The first paragraph is an abstract statement of the general rule of law ordinarily applicable, imposing upon one intending to turn a vehicle left at an intersection the duty to approach in the lane nearest the center line. In stating the general rule it was not necessary to state the exceptions, qualifications and limitations applicable in abnormal, emergency or exceptional circumstances.

Appellants argue there can be no absolute or unqualified duty and no negligence per se in violating a statute which is ambiguous and requires construction; that the terms "roadway" and "approaching" occurring in § 304.018, subd. 1(2) are ambiguous and need interpretation; therefore the section cannot "create negligence per se." We do not consider the terms "roadway" and "approaching," as used in No. 1 under the facts of this case, ambiguous or in need of construction. They are plain, ordinary English words which the average juror would have no difficulty in understanding and applying to the instant simple, uncomplicated fact situation.

Appellants say "plaintiff is precluded from reliance upon statutory or per se negligence" for the reason that the evidence presented two conflicting and divergent sets of essential facts, under one of which plaintiff would be entitled to prevail and under the other of which defendants should prevail; that under these circumstances, under the cases of Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496; Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541; Breshears v. Union Electric Company of Missouri, Mo.Sup., 347 S.W.2d 233; Knight v. Richey, 363 Mo. 293, 250 S.W.2d 972; Steele v. Goosen, Mo.Sup., 329 S.W.2d 703; Politte v. Miller, Mo.App., 301 S.W.2d 839, 845; Fortner v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 10, plaintiff's verdict-directing Instruction No. 1 should have postulated and required the finding of the facts essential in law to support the verdict; and that No. 1 "presents to the jury no such necessary findings of fact." The fact that the parties present conflicting and divergent theories of the manner in which the collision occurred does not preclude one injured by violation of a statute from relying upon negligence per se. The facts in this case essential to a recovery for negligence in violating § 304.018, subd. 1(2) are (a) a vehicle (b) driven by defendants who intend to turn at an intersection, (c) approaching the intersection for a left turn *not* in the portion of the right half of the roadway nearest the center line thereof, (d) colliding with a vehicle being operated by a plaintiff exercising the highest degree of care, and (e) causation between negligence and injury. No. 1 hypothesized these facts, together with the direction in which the vehicles were proceeding, the lanes in which they were traveling, and the driving of the

truck from the second lane into collision with the cab, in the lane nearest the center line. This hypothesization covered all of the essential facts. It was not necessary to hypothesize the speeds and relative distances apart of the two vehicles at various times, or failure to give a turn signal, as appellants seem to contend.

Appellants contend that § 304.018, subd. 1 (2), which is limited to persons who intend to make left turns at intersections, is not applicable here; that it placed no duties upon these defendants and "has nothing to do with this case" because "the uncontradicted evidence shows conclusively that defendant Gruenewald was not intending to make a 'left turn' at an intersection," under § 304.018, subd. 1(2), but was intending to make a U-turn under § 304.018, subd. 2. The record does not support appellants' contention. The answer alleged that "the Railway Express Agency truck was making a *left turn* out of one side of a six-lane divided highway for the purpose of crossing over at the end of the island dividing the east and west traffic, * * *." Gruenewald testified he "went east to the end of this island to make a *left turn* to go west on St. Charles"; that it was his intention to *"turn to the left"* at this intersection and "double back"; that he was intending "to make a *left turn* there, * * * you can call it a U-turn or a *left turn*." (Emphasis supplied in all quotations.) Furthermore, appellants' contention that § 304.018, subd. 2, which regulates U-turns under certain specified circumstances not here involved, placed no such duties upon Gruenewald as are postulated in No. 1, is irrelevant. Gruenewald admitted he intended to and was making a left turn. The left turn statute imposed certain duties upon him, no matter what he may have intended to do after turning left. A U-turn to the left cannot be made without making a left turn. If it is appellants' contention that while a left turn must be made from the lane nearest the center line, a U-turn may be made from the second lane or lane farthest from the center line, they are in error.

Appellants press the point, citing Willhite v. City of St. Louis, 359 Mo. 933, 224 S.W.2d 956, Terrell v. McKnight, 360 Mo. 19, 226 S.W.2d 714, Myers v. Buchanan, Mo.Sup., 333 S.W.2d 18, Swain v. Anders, 349 Mo. 963, 163 S.W.2d 1045, and Karch v. Stewart, Mo.Sup., 315 S.W.2d 131. It has been frequently stated that traffic regulations are not unyielding and inflexible and are not to be applied rigidly, absolutely and peremptorily without regard to circumstances or conditions, Wines v. Goodyear Tire & Rubber Co., Mo.App., 246 S.W.2d 525, MacArthur v. Gendron, Mo.App., 312 S.W.2d 146, and that the duties thereby imposed may be qualified by circumstances, Nelms v. Bright, Mo.Sup., 299 S.W.2d 483, such as considerations of safety, Lix v. Gastian, Mo.App., 287 S.W.2d 354, emergency conditions, Lewis v. Zagata, 350 Mo. 446, 166 S.W.2d 541, Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736, or impossibility. Politte v. Miller, supra. In such unusual circumstances deviation from the statutory standard will not be considered as negligence per se. In Willhite v. City of St. Louis, supra, the unusual circumstances were such that a jury might find it not negligent to pass another automobile on the right, so it was error to instruct that it was negligence as a matter of law, under all circumstances, to so pass. And we recognize a difference in the nature of the duties imposed by various rules of the road. Some impose absolute duties unmixed with the exercise of judgment. Others require the exercise of judgment. Terrell v. McKnight, Swain v. Anders, and Karch v. Stewart, supra, are examples of the latter. In them instructions were stricken down which erroneously foreclosed the jury from considering whether the required care was exercised under the facts, and arbitrarily declared that failure to comply with the rule of the road constituted negligence. In Myers v. Buchanan, supra, the jury, in order to apply the rule of the road, was required to determine whether the driver had certain knowledge, actual or constructive, which depended upon the finding of facts,

but the instruction imposed an absolute duty upon the driver regardless of knowledge. None of these situations prevails here. We find no unusual or exceptional circumstances which require the applicable rule of the road to yield to other considerations. Section 304.018, subd. 1(2) imposes a duty unmixed with the exercise of judgment, under which a driver of a vehicle intending to turn left at an intersection is required to make his approach for a left turn in the portion of the right half of the roadway nearest the center line thereof. Neither the presence, speed or movements of other vehicles, nor the driver's knowledge of these factors, plays any part in the application of § 301.018, subd. 1(2). The only absolving hypothesis of fact upon which appellants could have been acquitted of the statutory negligence charged, under the evidence in this case, would have been a submission that Gruenewald complied with the rule of the road by approaching the intersection in the lane nearest the center line (a converse of Instruction No. 1). We conclude that appellants' complaint that No. 1 fails to hypothesize all of the facts upon which defendants' negligence could be based and is drawn on the theory that a mere finding of making a left turn from a lane other than the lane nearest the center line is sufficient as a predicate of negligence regardless of attending circumstances, is not well taken.

■ Next, appellants complain that No. 1 hypothesized that their truck was driven "into collision with" the cab whereas in fact the cab was driven into the truck, so the instruction was broader than the evidence, and confused and misled the jury. This point is overly refined. To "collide" means to strike together; involves the concept of two bodies dashing against each other or clashing with some degree of force, and implies " 'an impact, the sudden contact of a moving body with an obstruction in its line of motion.' " Berry, Law of Automobiles, 7th Ed., Vol. 6, p. 664 et seq. See Boecker v. Aetna Casualty and Surety Co.,

Mo.App., 281 S.W.2d 561, 563. The truck was driven into collision with the cab, and vice versa, regardless of what part of the one vehicle came in contact with what part of the other.

■ Finally, No. 1 is said to be fatally defective for failure to require a finding of the existence of a hazard or danger to someone and knowledge by appellants, actual or constructive, of the existence of the danger; that absent such a finding no duty arose requiring Gruenewald to recognize the danger and act. Awareness of danger, however, is not an element of the duty under § 304.018, subd. 1(2). The General Assembly has fixed the standard of conduct required of a driver approaching an intersection with the intention of making a left turn. Knowledge or awareness of danger to others is not an element of the statutory duty under the legislative prescription, and we are not authorized to attach such a tail to the section.

Instruction No. 2, the target of appellants' second series of assaults, follows:

"The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in the evidence, the plaintiff, Robert Lincoln, was operating an automobile eastwardly immediately to the south of the median or center divider of St. Charles Rock Road at or near its intersection with Ridgeway Avenue, both open and public streets and highways in the City of St. John, St. Louis County, Missouri, and if you further find that at the time and place mentioned in the evidence, plaintiff was exercising the highest degree of care in the operation of his said automobile, if you so find, and if you further find that the defendants, Railway Express Agency, Inc., and Edward L. Gruenewald were operating their motor truck eastwardly in St. Charles Rock Road and to the right or south of the vehicle operated by plaintiff at the place mentioned in the evidence, if you so find, and if you further find that said automobile with plaintiff therein and the motor

truck of the defendant did then and there collide and that as a direct result thereof, if you so find, plaintiff was injured thereby, and if you further find that at and prior to said collision said Railway Express Agency, Inc., acting by and through its agent and servant, defendant Edward L. Gruenewald, did fail to keep a lookout for eastbound vehicles on said St. Charles Rock Road, if you so find, and did suddenly turn their said motor truck to the left and into the path of the automobile of plaintiff when said plaintiff's automobile was in close proximity thereto and without giving any signal or warning, if you so find, and if you further find that said defendants Railway Express Agency, Inc., and Edward L. Gruenewald did thus and thereby fail to exercise the highest degree of care in the operation of their said motor truck and were negligent (if you do find that said defendants did fail to exercise the highest degree of care and were negligent in the operation of their said motor truck in failing to keep a lookout for eastbound automobiles on said St. Charles Rock Road, if you so find, and in suddenly turning without any signal or warning their said motor truck to the left and into the path of the automobile of plaintiff when plaintiff's automobile was in close proximity, if you so find) and that the collision occurred as a direct and proximate result of such negligence of the defendants, and that plaintiff was caused to be injured thereby if you so find, then your verdict should be in favor of the plaintiff, Robert Lincoln, and against both the defendants, Railway Express Agency, Inc., and the defendant Edward L. Gruenewald."

██ Appellants contend that Nos. 1 and 2 are in direct conflict in that the jury could find for plaintiff under No. 1 without first having to find that Gruenewald failed to keep a lookout for plaintiff and failed to signal his intention to make a left turn, whereas under No. 2 these were necessary findings; i. e., the jury could not find for plaintiff under No. 2 without finding that Gruenewald failed to keep a lookout and

failed to signal his intention to turn left. There is no conflict between Nos. 1 and 2. They are not repugnant or irreconcilable. No. 1 submits violation of the statutory rule of the road requiring left turns from a certain part of the roadway. No. 2 submits common law failure to keep a lookout and sudden turning to the left into the path of the cab in close proximity thereto without giving any signal or warning. Plaintiff had a more onerous burden under No. 2 than under No. 1 but this does not make them conflicting or inconsistent. The several assignments of negligence submitted were pleaded and the evidence supports them. If plaintiff's evidence be accepted Gruenewald violated the rule of the road with respect to the required lane on approaching an intersection with intent to turn left, and suddenly turned into the path of the cab while in close proximity and without giving any signal or warning. The two instructions are complementary and consistent.

██ Appellants' principal complaints are that No. 2 fails to require the finding of facts creating a duty upon the truck driver to keep a lookout or warn of an intended turn, or warranting the conclusion that the truck driver was negligent in failing to do so, but assumes the existence of the duty, requires the jury to find only that no lookout was kept or signal given, and fails to define the phrase "close proximity." These contentions are without merit. No. 2 did not assume the existence of these duties, but required the finding of facts which as a matter of law gave rise to these duties, and provided a sufficient standard and basis for a finding of negligence on the part of Gruenewald in these respects. The quick of the matter for decision by the jury under No. 2 was whether Gruenewald failed to keep a lookout for eastbound vehicles; whether he suddenly turned left into the path of the cab when the cab was "in close proximity" thereto without giving any signal or warning, and whether this constituted negligence under the facts. A

more detailed fact picture than that submitted in No. 2 was not necessary in order for the jury to determine these questions. There was a sufficient hypothesis of the ultimate issuable facts and a sufficient standard for the guidance of the jury in determining negligence vel non. The words "in close proximity thereto" did not require factual delineation because this is a term that no layman would misunderstand.[2]

Next appellants object that No. 2 failed to postulate any facts showing that if Gruenewald had kept a lookout for the cab or signaled his intention to make a left turn, the collision would have been averted. In a primary negligence case it is sufficient to submit failure to keep a lookout, together with a finding of causation, and it is "unnecessary to submit the further hypothesis that by keeping a proper lookout defendant could have seen plaintiff" or could have averted the collision. Fortner v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 10, 14, 15, cited and quoted approvingly in Thaller v. Skinner & Kennedy Co., Mo. Sup., 315 S.W.2d 124, 130.

Finally, appellants complain that No. 2 does not require a finding that the vehicles were in "dangerous" proximity to each other or that at any time Gruenewald knew, actually or constructively, that they were so situated, and that a collision would occur if preventive measures were not taken. "Close" proximity may be equated with "dangerous" proximity, under the instant facts. There is no dispute about the fact that Gruenewald knew the cab was approaching from the west, for he admitted

he saw it when it was at a point approximately 425 feet away, and that he drove at 5 m. p. h. straight across the right half of the roadway (and thus into its path), without once more looking to the west or making any effort to ascertain the location of the cab. The point is without merit. See Brumback v. Simpson, Mo.Sup., 247 S.W. 2d 635 [3], 639.

Appellants' last point is that the verdict is self-destructive and should not be permitted to stand. After deliberating the jury returned two verdicts, both signed by the foreman, one for plaintiff for $20,000 and against both defendants; the other for plaintiff for $20,000 and against the corporate defendant but in favor of the individual defendant. Counsel for defendants objected to the inconsistency of the verdicts. The court then instructed the foreman that the court had received two verdict forms but that only one form of verdict was appropriate, saying "You will have to use one form or the other and I am going to send you back to your jury room to decide upon the verdict you want to bring in." The foreman said: "Did I sign two instead of one paper?" The court indicated that he had. The foreman said "Well, I can easily correct that." The court sent the jury back, directing them to take the two forms of verdict to the jury room "and work out your solution as a jury." Defendants' counsel did not object except the one time, as indicated. Thereafter the jury returned a single verdict finding the issues for plaintiff for $20,000 and against both defendants, in unexceptional form. The present objection was not made at that

---

2. In Sander v. Callahan, Mo.Sup., 351 S.W. 2d 691, 696, criticism of the words "an immediate hazard" was not sustained; in Garrison v. Ryno, Mo.Sup., 328 S.W.2d 557, the phrase "at a time when the automobile * * * was approaching so closely on [the through highway] as to constitute an immediate hazard" was held sufficient; in Wines v. Goodyear Tire & Rubber Co., supra, 246 S.W.2d loc. cit. 531, the words "as close as practicable" were upheld; in MacArthur v. Gendron, supra, the failure to more particularly define the clause "yield the right of way" was upheld; in Wirth v. St. Louis County Transit Co., Mo.App., 253 S.W.2d 547, the words "as near to the right hand side of the road as practicable" were held not to require definition; and Matthews v. Mound City Cab Co., Mo.App., 205 S.W. 2d 243, sustained an instruction using the words "reasonable warning" without defining the term.

time, nor was it made in the motion for new trial. Notwithstanding the point has not been properly preserved, Supreme Court Rule 83.13(a), V.A.M.R., we have considered it and have determined that the court acted properly; that no prejudice to appellants' rights resulted, and that appellants have no cause for complaint.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.