Virginia CONDOS, Plaintiff-Respondent,

v.

ASSOCIATED TRANSPORTS, INC., Defendant-Appellant.

No. 33268.

St. Louis Court of Appeals, Missouri.

March 24, 1970.

Gerald D. Morris, St. Louis, for defendant-appellant.

Dearing, Richeson, Weier, Roberts & Wegmann, Hillsboro, for plaintiff-respondent.

BRUCE NORMILE, Special Judge.

In this case plaintiff was a passenger in an automobile involved in a collision with a tractor-trailer unit operated on defendant's behalf. Plaintiff received a verdict and judgment in the amount of $10,000.00. Defendant appeals.

The accident in which plaintiff was injured occurred at about nine o'clock a. m. on June 12, 1964, a clear, dry day, on U.S. Highway 66, at the northwest edge of St. Clair, Missouri. At that point, the highway runs generally east and west. The two westbound lanes are divided from the two eastbound lanes by a grassy median. Each westbound lane is concrete and 12 feet wide. Along the north or right side of the westbound lanes is a solid, gravel shoulder 12 feet wide. The road is straight for a considerable distance in the vicinity of the accident and westbound traffic is traveling downhill. The crest of the hill is about 1,000 to 1,500 feet east of the point of the accident. Both vehicles were traveling westwardly. The accident occurred on or just north of the westbound lanes at a private gravel drive which intersects the north edge of the highway and leads back northeastwardly to a plant operated by the Steelweld Corporation. This private drive is about 20 feet wide with the mouth of it being somewhat wider. The east edge of the drive is lower than the west edge and the east curb of the drive is broken down at the end of a culvert running under the drive. Directly south of the private drive is a cross-over between the two westbound lanes and the two eastbound lanes.

Plaintiff was a passenger in a 1959 Cadillac operated by her son-in-law, William Harp. The defendant's vehicle was a tractor-trailer auto transport rig with a total length of 50 feet and a width of 8 feet. It was loaded with two automobiles on the bottom deck and three panel trucks on the top deck. Defendant's driver was Mr. Charles R. Hensic, who was familiar with the highway and the private drive into the Steelweld Corporation Plant.

There is a sharp conflict in the evidence relating to the movement of defendant's tractor-trailer unit and its position on the highway at the time of the impact.

Plaintiff's evidence was as follows: The Harp car was in the left-hand lane when it came over the crest of the hill east of the private drive. Defendant's vehicle then first came into view an unknown distance ahead in the right-hand, westbound lane. At about this time the left turn signal on defendant's rig began to flash and the whole rig moved from the right-hand lane completely into the left-hand lane. Thereafter, defendant's rig continued to slow down. Its brake lights flashed off and on, and as it neared the point of accident, they remained on constantly. At all times defendant's left turn signal was flashing. Mr. Harp moved into the right-hand lane when a distance of

500 feet separated the two vehicles. He was aware of the cross-over ahead of both vehicles going left from the westbound lanes over to the eastbound lanes. When the Cadillac reached a point in the right-hand lane where it was either even with or a short distance behind the trailer in the left-hand lane, the tractor-trailer started to turn to the right into the path of the Cadillac. Mr. Harp sounded his horn, applied his brakes, and swerved to the right. However, the collision occurred with impact to the front, left-hand corner and side of the Cadillac and to the right side of the tractor, at the right door and front fender. Both vehicles pretty well stopped at impact with the Cadillac completely off the paved portion of the highway and completely on the private drive to the north of the highway. The tractor portion of defendant's rig was mostly into the private drive facing northwest with the trailer blocking the right lane and a large part of the left lane of the highway. The Cadillac left 30 paces of skidmarks which began on the right-hand, westbound lane and veered to the right on the shoulder and into the drive up to the rear wheels of the Cadillac. The vehicles remained in contact after they came to rest.

Mr. Hensic's version of the accident was as follows: He had crested the hill in the right-hand, westbound lane at about 20 miles per hour intending to make a right turn into the private drive to get to the Steelweld Plant. He had turned his right turn signal on at the crest of the hill and it remained on up to the time of the accident. When he was about 65 feet from the private drive, Mr. Hensic turned into the left lane, "Six, eight inches, something like that, just enough to get over far enough so I could swing in." When asked why he didn't make the right turn from the right-hand lane, Mr. Hensic testified, "That was impossible"; and he explained: "There's a culvert there and you can't turn a 50-foot outfit into the driveway at that angle." Mr. Hensic did not see the Cadillac prior to his turn to the right towards the private drive. His first notice of danger was the squealing of

tires. At impact his tractor had cleared the north edge of the pavement by about 4 inches and was at the west edge of the drive. The trailer completely blocked the right lane and a small part of the left lane.

In rebuttal to Mr. Hensic's evidence, plaintiff submitted the evidence of a registered engineer, Mr. Bilhorn, who stated that defendant's tractor-trailer rig could have made a right turn into the drive from the right-hand lane without moving into the left lane at all.

Defendant's first assignment of error relates to the submission of Instruction No. 3 which reads as follows:

"Your verdict must be for the plaintiff if you believe:

"First, defendant in approaching the intersection intending to turn right and in making a right turn failed to drive its tractor-trailer as close as practicable to the right hand edge of the highway, and

"Second, as a direct result of such conduct, plaintiff sustained damage unless you believe plaintiff is not entitled to recover by reason of Instruction No. 5.

(MAI 17.17 Modified)"

Instruction No. 3 is based on violation of § 304.018 RSMo V.A.M.S. 1959, subd. 1(1) as follows:

"1. The driver of a vehicle intending to turn at an intersection shall do so as follows:

"(1) Both the approach for a right turn and while making a right turn, shall be made from that portion of the roadway as close as practicable to the right-hand curb or edge of the highway; * * *."

Instruction No. 3 was a modified MAI 17.17 "per se negligence—improper turn". It did not refer to negligence nor require a finding that the defendant's submitted conduct was negligent.

Defendant first urges that the instruction erroneously omitted a required finding of "negligence" and held defendant to an absolute, inflexible standard which was not applicable under all the circumstances.

A failure to comply with the statute, in the absence of a showing of a reasonable excuse for its non-observance, constitutes negligence per se. Lix v. Gastian, Mo.App., 261 S.W.2d 497, 501, Rowe v. Kansas City Public Service Co., 241 Mo. App. 1225, 248 S.W.2d 445, 448. The fact that the parties present conflicting and divergent theories of the manner in which the collision occurred does not preclude one injured by violation of the statute from relying upon negligence per se. Lincoln v. Railway Exp. Agency, Inc., Mo., 359 S.W.2d 759, 764, Jones v. Smith, Mo., 372 S.W.2d 71, 77.

In Lincoln v. Railway Exp. Agency, Inc., supra, and Anthony v. Jennings, Mo.App., 368 S.W.2d 533, 537 the courts stated:

" * * * It has been frequently stated that traffic regulations are not unyielding and inflexible and are not to be applied rigidly, absolutely and peremptorily without regard to circumstances or conditions, Wines v. Goodyear Tire & Rubber Co., Mo.App., 246 S.W.2d 525, MacArthur v. Gendron, Mo.App., 312 S.W.2d 146, and that the duties thereby imposed may be qualified by circumstances, Nelms v. Bright, Mo.Sup., 299 S.W.2d 483, such as considerations of safety, Lix v. Gastian, Mo.App., 287 S.W.2d 354, emergency conditions, Lewis v. Zagata, 350 Mo. 446 166 S.W.2d 541, Filkins v. Snavely, 359 Mo. 356, 221 S.W.2d 736, or impossibility. Politte v. Miller, supra. [Mo.App., 301 S.W.2d 839]. In such unusual circumstances deviation from the statutory standard will not be considered as negligence per se."

Unless there are such unusual circumstances here, the facts hypothesized in Instruction No. 3 do make out a case of actionable negligence on the part of the defendant as a matter of law; and it would not be necessary to submit to the jury the question of whether or not such facts constituted negligence. Courtney v. City of Ferguson, Mo.App., 401 S.W.2d 172, 175.

Essentially the defendant urges that the necessity for Mr. Hensic to turn the tractor-trailer unit to the left before he could make the right turn (as required by the length of the tractor-trailer rig, the narrowness of the drive, etc.,) constituted such an unusual circumstance so as to qualify the requirements of the statute. The defendant relies upon Lincoln v. Railway Exp. Agency, Inc., supra, Lix v. Gastian, supra, Garrison v. Ryno, Mo., 328 S.W.2d 557, and Anthony v. Jennings, supra.

The Lincoln case involved a charged violation of Section 304.018, Subd. 1(2), V.A. M.S., 1959, which requires an approach for a left turn to be made in the portion of the right half of the roadway nearest the center line. Defendant's leading vehicle had made a left turn in front of plaintiff's overtaking vehicle. Plaintiff's instruction No. 1 there, submitting defendant's failure to approach for a left turn from that part of the roadway nearest the center line, did not require a finding of negligence. Defendant-Appellant made the same objection there as made here: That the instruction postulated an unqualified duty, whereas the statute created a duty which might be qualified by circumstances. The court found no unusual or exceptional circumstances which required the Rule of the Road to yield to other considerations and stated: (359 S.W.2d 1. c. 766) "(The statute) * * * imposes a duty unmixed with the exercise of judgment, under which a driver of a vehicle intending to turn left at an intersection is required to make his approach for a left turn in the portion of the right half of the roadway nearest the center line thereof. Neither the presence, speed or movement of other vehicles, nor the driver's knowledge of these factors, plays any part in the application of § 301.018, subd. 1(2). * * *" The court con-

cluded that appellant's complaint was not well taken.

Lix v. Gastian, supra, did find that the duties imposed by traffic regulations were qualified for considerations of safety. It also considered what is now Section 304.-018, subd. 1(2) concerning a left turn; but it did not involve an overtaking plaintiff. It is evident in Lix that there was an obstruction, a pile of chat, in the intersection which would not allow the defendant to drive in the portion of the highway "nearest the center line." The court found this to be an unusual or exceptional circumstance and held that the jury might reasonably find a valid excuse for failure to observe the statutory rule where the failure to comply was induced by considerations of safety. Under those facts, there was no negligence, per se, and a jury question was made as to the defendant's negligence. In addition to the unusual circumstances found in the Lix case, the language of the statute construed there, Section 304.018, subd. 1(2) requiring that "[an] approach for a left turn shall be made in the portion of the right half of the roadway nearest the center line" is much less flexible than the language of the statute applicable here, 304.018 subd. 1(1) which requires that a right turn be made, "as close as practicable" to the right side of the highway. Thus, in Lix, if the applicable rule had only required the defendant to drive "as close as practicable" to the center line, the act of driving around the pile of chat obstructing the road would not have constituted a violation of the statute.

The instruction given in Garrison v. Ryno, supra, also did not require a finding of "negligence". Defendant made the same objection as made here: That an absolute duty (to yield the right-of-way in Garrison) had been imposed regardless of the circumstances; that the duty imposed by the statute was relative; and that the instruction should have submitted the question of negligence. The questioned instruction on the failure to yield the right-of-way had the language "at a time when the automobile * * * was approaching so closely on the through highway as to constitute an immediate hazard". Although noting that traffic duties could be qualified by circumstances, and should not be rigidly applied, the court referred to the instruction just quoted and stated: (328 S.W.2d l. c. 566) "This savings clause, * * * neutralizes appellants' criticism of the instruction. Because of the 'so closely' clause respondent's right to a favorable verdict is predicated upon a jury finding of facts which constitute negligence. By the 'so closely' clause the jury is obliged to find the issue of negligence *vel non* according to the statutory definition, upon a consideration of a certain hypothesized set of surrounding facts and circumstances, and is not directed to return a verdict for respondent automatically upon a mere finding of a failure to look, stop or yield."

▮ In the instant case the language of the Instruction No. 3 requiring a finding of defendant's failure to drive "as close as practicable to the right-hand edge of the highway" similarly constitutes a "savings clause", and neutralizes defendant's criticism of instruction. This instruction did not impose an absolute and unqualified duty on the defendant herein regardless of any other facts or circumstances. Under this instruction the jury could have found the defendant's driver to be in compliance with the statute even though he entered onto the left lane of the highway in making the right turn, if they found that this was "as close as practicable". Whether defendant's driver crossed the center line is not involved. The "ultimate fact" is whether he drove as close as practicable to the right-hand side of the road. The jury found that he did not do so. They are not further required to find that failure to be negligence. That failure is negligence per se under this section of the statute and the facts of this case.

The case of Anthony v. Jennings, Mo. App., 368 S.W.2d 533 construed an instruction which had been approved in the

case of MacArthur v. Gendron, Mo.App., 312 S.W.2d 146, but found upon the evidence in the case that the jury could only guess or speculate and affirmed the order of the trial court granting a new trial.

Defendant's second criticism of Instruction No. 3 is that it "compelled the jury to find in favor of Plaintiff even though they completely disbelieved Plaintiff's theory and completely accepted Defendant's theory, said theories being irreconcilably at war with each other." This contention has no merit as may be seen from the previous discussion. In fact, the jury could have believed the plaintiff's evidence as to the facts of the accident concerning the movement and location of defendant's tractor-trailer rig, but still found in defendant's favor if they also found that such movement was "as close as practicable to the right-hand side of the road". Such a finding would not be contrary to plaintiff's theory that defendant's driver did not drive "as close as practicable to the right hand side of the road".

Defendant's next assignment of error relates to the admission of the testimony by deposition of Doctor R. B. Larrick. Doctor Larrick testified that, in his opinion, plaintiff needed an operation on her left knee which would cost a minimum of $1,500.00 for hospital and surgical expenses.

Defendant's first objection, on this appeal, to the admission of this testimony was that the operation, and its expense, had not been pleaded as special damages; that they were, in fact, special damages that had to be pleaded; and that their admission in evidence over the defendant's timely objection was prejudicially erroneous to defendant.

There was no reference in the pleadings to the operation or its expenses. Plaintiff's petition did allege: " * * * both the plaintiff's knees were severely injured and damaged, that said injury to plaintiff's knees has caused her to fall on numerous occasions; that additional injuries to her knees and legs have resulted therefrom;

that plaintiff had a pre-existing arthritic condition in her left knee, leg, and spine that was aggravated by the collision hereinabove referred to; that plaintiff had a pre-existing healed fracture in her left knee that was aggravated by the collision hereinabove referred to; her neck, back, spine and all of the parts thereof were injured * * * she has incurred medical expense for treatment of her injuries; she will in the future suffer severe mental pain and bodily anguish * * * she will be caused to incur expense for medical treatment in the future, and her injuries are permanent and progressive * * *."

Civil Rule 55.21 V.A.M.R. provides that: "When items of special damage are claimed, they shall be specifically stated." See also 509.200 RSMo 1959, V.A.M.S.

▆▆▆ General damages are those which the law would impute as the natural, necessary and logical consequence of defendant's wrongful act. Special damages are the natural, but not necessary, result of the wrongful act. Boehm v. St. Louis Public Service Co., Mo., 1963, 368 S.W.2d 361, 368; Devine v. Kroger Grocery & Baking Co., 1942, 349 Mo. 621, 162 S.W.2d 813, 819 [14, 15]; Parsons Const. Co. v. Missouri Public Service Co., Mo., 1968, 425 S.W.2d 166, 173.

Defendant cites several cases to support his position in this regard. The case of Devine v. Kroger Grocery and Baking Co., supra, held that the evidence objected to was, in fact, within the pleadings. The court at 162 S.W.2d 1. c. 819 stated: " * * * we are of the opinion the allegation that 'plaintiff's abdomen and all the organs therein were severely mashed, crushed and bruised' considered with the other allegations and the entire record was sufficient to cover the evidence as to the displacement of the kidney * * *."

Layton v. Palmer, Mo., 1958, 309 S.W. 2d 561, 567 [10, 11] posed an unusual situation in that the *defendant* offered testimony as to the cost of an operation for

the *plaintiff* in plaintiff's suit for personal injuries. The plaintiff's objection to the evidence was sustained and affirmed on the basis that the items were special damages not pleaded and for which plaintiff's husband was liable. The plaintiff's husband was not a party to the suit.

Defendant relies most heavily upon the case of Ziervogel v. Royal Packing Co., Mo.App., 1949, 225 S.W.2d 798. Allegations were made as to injury to the neck, back, thigh and nervous system. Evidence was received at the time of trial as to resulting increased blood pressure. The court at l. c. 802 noted: " * * * not only is there no mention of increased blood pressure but no injuries are alleged from which it can reasonably be said that an increase in blood pressure was an inevitable or necessary result. Nor was there any evidence to show that the increased blood pressure was the necessary or inevitable result of the injuries alleged in the petition." It was clear that defendant was not surprised by the evidence. The court reversed plaintiff's judgment and remanded it for a new trial. However, it hinted that an offer to amend at time of trial might have cured the error which it found. In Erbes v. Union Elec. Co., Mo., 1962, 353 S.W.2d 659, 668 [9], evidence was admitted as to a "lung blowout" under a plea of injury to plaintiff's "internal organs, and body". The Supreme Court noted that the appellate decisions of the State were not in strict harmony on the question of the evidence being outside the scope of the pleadings. The court cited a long list of cases supporting admission of the evidence followed by another long list of cases, including Ziervogel v. Royal Packing Co., supra, which would not allow the evidence. The Supreme Court approved the admission of the evidence, thus declining to follow Ziervogel. The Ziervogel case has also been distinguished on its facts. Pope v. St. Louis Public Service Co., Mo., 1960, 341 S.W.2d 123, 125 [1, 2]; Spears v. Schantz, 241 Mo.App. 879, 1952, 246 S.W.2d 399, 413. The result in Ziervogel has been call-

ed, "an undue deference to form at the expense of substance". 31 Mo.Law Review 6. The remote connection between the allegation of injuries and the evidence as to high blood pressure in Ziervogel also distinguishes it from the present case.

■ The admission of the evidence as to the operation in this case was proper. It is supported by several factors or reasons: (1) The allegation made here of "future medical treatment" can be construed to include "future surgical treatment". The Random House Dictionary of the English Language, the unabridged edition, 1967, defines "medical" as: "1. of or pertaining to the science or practice of medicine * * *." The word "medicine" is defined as: "2. the art or science of restoring or preserving health or due physical condition, by means of drugs, surgical operations, appliances, manipulations, etc.; often divided into medicine proper, surgery, and obstetrics." The word "treatment" is defined as: "3. Management in the application of medicines, surgery, etc." See Erbes v. Union Elec. Co., Mo., 1962, 353 S.W.2d 659, 668 [9], where evidence of a "lung blowout" was allowed under a plea of injuries to plaintiff's "internal organs"; and see Pope v. St. Louis Public Service Co., Mo., 1960, 341 S.W.2d 123, 125 [1, 2], where evidence of a "lumbosacral disc syndrome with irritation of the nerve roots, [etc.]" was allowed under a broad plea of injury to plaintiff's "back, spine, both legs * * * and all organs and parts thereof".

(2) "Plaintiff had a right to prove the necessary treatment for the injuries which were pleaded. * * * Evidence as to the 'mode and incidents' of this necessary treatment was admissible under the allegations to which reference has been made, Hollensbe v. Pevely Dairy Co., Mo.App., 38 S.W.2d 273, 275 [2], for the purpose of showing the seriousness of the injuries to plaintiff's leg and her probable suffering. * * *" Boehm v. St. Louis Public Service Co., supra, 368 S.W.2d l. c. 368. In Boehm there was only a general allegation of injury to

the "leg, ankle and foot, the bones, muscles, joints, tendons, tissues, nerves, cells, * *." Over objection evidence was taken as to a series of operations and skin grafts, surgical debriding, and amputation of tissues and arteries. The court also stated: "Evidence of the foregoing operations, etc. would have been inadmissible to augment plaintiff's damages as special items of damage, under this rule and statute, since operations of this kind are not the necessary and inevitable result of the type of injury pleaded. * * * It does not follow, however, that the evidence was inadmissible for all purposes. * * *" In the instant case, this is an additional, rather than the only, factor supporting admission of the evidence.

(3) No motions to make the allegations of the injury more definite and certain were made by defendant. The Supreme Court, in Erbes v. Union Elec. Co., supra, noted that the group of cases it followed gave considerable significance to the failure to seek a more definite specification of injuries, and gave this as a factor in approving the admission of the evidence in that case. This has been interpreted as the primary reason for that approval. 27 Mo. Law Review, pp. 560-562.

(4) There was clearly no "surprise" to defendant here where the deposition of Doctor Larrick, containing this testimony, was taken on November 23, 1963 and the trial began on January 8, 1968. The purpose of the rule requiring allegation of "special damages" is to give defendant fair notice of the damage that plaintiff will claim, and thus to prevent surprise. Simon v. S. S. Kresge Co., Mo.App., 1937, 103 S.W.2d 523 [3], 25 C.J.S. Damages § 131(1), p. 1186; § 131(2), p. 1189; and, § 139, p. 1217, fn. 88.

 (5) The handwritten interlineation of the words "including future knee surgery" into the petition at the time of trial, out of the hearing or knowledge of the jury should not be the determining factor in finding prejudicial error. It is

clear that upon request the trial court would have allowed the amendment to the petition at the time of trial, since it admitted the evidence as being within the scope of the pleadings and since there was no surprise. This would have been within the discretion of the trial court and no error would now be present, even under the theory of the appellant. This was not done. However, Civil Rule 55.54 V.A.M.R., also allows amendment of the pleadings to conform them to the evidence and this may be done even after judgment is entered and over the objection of the other party. Dressler v. Louvier, Mo., 1966, 408 S.W.2d 852, Johnson v. Flex-O-Lite Mfg. Corp., Mo., 1958, 314 S.W.2d 75, 83 [9]. Pleadings may be considered to be amended to conform to the proof under the rule even when the amendment is not in fact made. LaPlant v. E. I. Du Pont De Nemours & Co., Mo.App., 1961, 346 S.W.2d 231, 241; Knight v. Swift & Co., Mo., 1960, 338 S.W.2d 795, 800 [8]; Bowers v. Spinaio, Mo. App., 1967, 421 S.W.2d 790; Heald v. Erganian, Mo., 1964, 377 S.W.2d 431. The rule also provides: " * * * If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action would be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. * * *" Assuming a remand and amendment as above, on retrial the same evidence as admitted in this case would be submitted under the same instruction to a jury unaware of the status of the pleadings. In this case there was no prejudice to defendant in maintaining his defense on the merits by the admission of this evidence. Amendment can also be allowed in this court under Civil Rule 74.31 V.A.M.R. Where surprise is actually present, or where additional time is needed to meet the additional evidence under an amendment, parties can be protected by the granting of continuances un-

der Rule 55.54, e. g. Northwest Missouri State Fair, Inc. v. Linville, Mo.App., 448 S.W.2d 274, 278(4).

Defendant's objection to the testimony of Doctor Larrick as to the expenses of the operation he described, was not made on the basis that it was not within the pleadings. Rather the objection to this portion of the doctor's testimony was on the ground that testimony with regard to the expense of the operation was speculative and conjectural. This objection was overruled at trial and no allegation of error in that regard has been made on this appeal.

■ Defendant's second attack on the admission of Doctor Larrick's testimony as to the operation and its expense, is on the basis that the plaintiff failed to establish that the accident directly caused, or directly contributed to the need for the plaintiff's knee operation. The burden is on the plaintiff in a personal injury action to show, by substantial evidence, causal connection between the alleged injuries and the negligence of the defendant. Gulley v. Spinnichia, Mo.App., 341 S.W.2d 301; Bertram v. Wunning, Mo.App., 385 S.W.2d 803.

■ Plaintiff has successfully met that burden in this case by presenting evidence as to the following facts. Plaintiff had sustained a fracture of the patella in 1930. There was a preexisting arthritic condition and an abnormal bone structure of the knee. However, for twenty years before the accident, plaintiff was free of symptoms in the knee. There was trauma and injury to the knee in this accident with pain and disability thereafter. The symptoms following the accident included pain, swelling in the knee, crepitation, loss of function, restricted motion, instability, loss of strength in the knee, and muscle wasting of the left thigh and calf. Plaintiff received medical attention, physical therapy and wore an elastic bandage. She was restricted in stooping, bending lifting, and climbing stairs after the accident, although there had been no limitations previous to it. Doctor J. Otto Lottes, an orthopedic surgeon, testified as to his findings, which included restricted motion, tenderness, muscle weakness, marked crepitation on movement and spurring. He testified that an injury to the knee would aggravate the preexisting condition. In response to a hypothetical question, based upon reasonable medical certainty, he stated: "'The present complaints and findings are related definitely to the last accident." Doctor Lottes found it to be a permanent condition. Doctor Earl P. Holt, Jr., an orthopedic surgeon who testified on behalf of the defendant, found a restriction of motion in the knee, crepitation and arthritis. He testified that the arthritic condition in the knee could have been aggravated by an injury; and that plaintiff's knee could have been pain free with full motion before this accident. Doctor Larrick testified as to his opinion, based upon reasonable medical certainty, "That the automobile accident caused part of the troubles I found, and did not cause part of the other trouble"; and that: " * * * the production of symptoms, in my opinion, were due to the automobile accident." He testified that there had been aggravation of the disability and production of symptoms by the accident. Doctor Larrick's prognosis was: " * * * eventually, she was going to have to have surgery on her knee."

The case of Crawford v. Chicago-Kansas City Freight Line, Inc., Mo., 1969, 443 S.W.2d 161, considered the same question as to whether there was substantial medical evidence as to the need for future surgery. Upon evidence less favorable to the plaintiff, the court found substantial evidence to support the instruction as to future damages in that case. Also, see Stephens v. Guffey, Mo., 409 S.W.2d 62, 70, concerning testimony as to the cause of future surgery.

Defendant's third point on this appeal relates to the refusal of his instruc-

**692**

tion "A", an MAI 30.01 instruction, withdrawing evidence of the operation and its expenses from the jury consideration. As previously determined, this evidence was properly received in evidence and could be considered by the jury. The refusal of instruction "A" was not erroneous.

Defendant's final point relates to claimed error in the admission of testimony and opinion of Edward W. Bilhorn, an engineer, who testified in rebuttal for plaintiff. In response to a hypothetical question, Mr. Bilhorn stated, in his expert opinion, that defendant's tractor-trailer combination could negotiate the right turn from Highway 63 into the private drive without crossing over the center line into the left lane. Defendant urges that no proper factual foundation was laid as a basis for this testimony and that the opinion was, thus, only speculation and conjecture.

However, the record shows that defendant's first objection to the question calling for the expert opinion was sustained by the trial court on the ground that sufficient facts were not hypothesized. Plaintiff's counsel rephrased the question to include additional facts and circumstances.

Defendant's counsel again objected that the hypothetical did not take into account all the circumstances and suggested certain items which should be included. Plaintiff's counsel, thereafter, incorporated the additional items in the question to Mr. Bilhorn. No further objection was made to the question. Mr. Bilhorn then gave his opinion that defendant's tractor-trailer combination could make the right turn without crossing over the center line into the left lane. Subsequently, in response to a similar question, also asked without objection by the defendant, Mr. Bilhorn repeated his opinion. Since no objection was made to this evidence at time of trial, defendant may not now have appellate review of the question. Faught v. Washam, Mo., 1959, 329 S.W.2d 588, 599(17); Appelhans v.

Goldman, Mo., 1961, 349 S.W.2d 204, 207 (5, 6).

The judgment is affirmed.

WOLFE, P. J., and BRADY, J., concur.