THE STATE, Appellant, v. HAMBLETON, Respondent.

1. An indictment, under section 57 of article 3 of the act concerning crimes and punishments, (R. C. 1845,) which charges that the defendant " did unlawfully, wilfully, maliciously and feloniously kill a *certain horse beast*, to-wit, *one mare*, then and there the property of one A. B.," &c., is sufficient. Courts will take judicial notice, that horses are included in the term " cattle," as used in that section.
2. In such an indictment, it is not necessary to charge malice against the owner of the animal killed, nor to state the manner of killing.

*Appeal from Polk Circuit Court.*

The indictment, which is set out in the opinion of the court, being quashed below, the circuit attorney, on behalf of the State, appealed to this court.

*Gardenhire*, (Attorney General,) for the State.

*F. P. Wright*, for respondent. 1. The indictment does not follow the words of the statute. It should have charged the defendant with killing *certain cattle*, instead of a *certain horse beast*. (2 Hawk. ch. 25, § 110.) 2. The indictment is also defective in not charging *malice* against the owner, or otherwise describing the offence, so as to have made it apparent that the act was malicious. (State v. Jackson, 22 Iredell's Rep. 329.) 3. The indictment is also bad in not charging the

*manner* of killing. (1 Archbold's Crim. Pl. 86, note 1; 2 Hale, 183, 184, 187, note; Hawk. B. 2, C. 25, § 57.)

RYLAND, Judge, delivered the opinion of the court.

The only question in this case is upon the sufficiency of the indictment, which is as follows, to-wit:

"State of Missouri, county of Polk. In the Circuit Court, October term, A. D. 1853. The grand jurors for the State of Missouri, sworn, and charged to inquire for the body of the county of Polk, upon their oath present, that Montraville Hambleton, late of the county of Polk aforesaid, on the 10th day of September, in the year of our Lord eighteen hundred and fifty-three, at the county of Polk aforesaid, did then and there unlawfully, wilfully, maliciously and feloniously kill a certain horse beast, to-wit, one mare, then and there the property of one Albert Bryant, of the value of fifty dollars, contrary," &c.

This indictment was demurred to by the defendant. The demurrer was sustained. The indictment is founded on the 57 §, 3 art. of stat. concerning crimes and punishments. (R. C. 1845, p. 364, § 57.) "If any person shall wilfully and maliciously kill, maim, or wound any cattle of another, he shall on conviction be punished as in the next preceding section is provided:" that is, by imprisonment in the penitentiary not exceeding three years, or in the county jail not less than six months, or by fine not less than two hundred and fifty dollars, or by both a fine not less than one hundred dollars, and imprisonment in the county jail not less than three months.

The defendant's counsel in this court contends, that the indictment is insufficient, because it does not follow the words of the statute. The averment should have been *certain cattle*, instead of a certain *horse beast*. In the second place, it is defective in not charging malice against the owner, or otherwise describing the offence, so as to have made it apparent to the court that the act was malicious. Thirdly—the indictment is bad in not setting out the manner and means of killing.

We do not think any of the objections to the indictment well taken. The offence is sufficiently charged. In the Crown Circuit Companion, an old but a most excellent book for a circuit attorney, we find the form of an indictment for feloniously and maliciously killing a gelding. The substance is as follows : " One black gelding of the price of fourteen pounds, of the goods and chattels of one J. J., in a certain field belonging to him the said J. J., then and there being, feloniously, unlawfully, wilfully and maliciously, then and there did kill and destroy, to the great damage of him the said J. J., against the form, &c., and against the peace, &c." (Cr. Cir. C. 83.) The pleader has not here pretended to describe the means used to kill, nor has he described the manner and mode of killing.

The expression in the statute, "any cattle," is broad and ample enough to embrace the animal killed in this case, and there was no necessity to use the words "certain cattle." A certain "horse beast, to-wit, one mare," is particular and descriptive enough. Indeed the counsel for the defendant does not pretend to deny that the word "cattle" includes horses in this section of the statute. Our statute, that is, the 57th section before cited, is almost a literal copy of the 7 & 8 Geo. IV, chap. 30, § 16, so far as it regards the description of the offence. The English statute delares, "that if any person shall unlawfully and maliciously kill, maim or wound any cattle, &c." Ours has the word "wilfully," instead of "unlawfully." Now, under this statute, the word cattle embraces horses, mares, colts, bulls, oxen, cows, heifers, calves, &c. In Rex. v. Chalkley, 1 Russ. & Ry. C. C. 258, the defendant was indicted, under 9 George I, ch. 22, for killing certain cattle, to-wit, "one mare." The court held, that to charge the defendant with killing "certain cattle," without stating what kind of cattle, would not be sufficient. The indictment in the first count charged "that John Chalkley, on the 12th day of September, 1813, at Horsney, certain cattle, to-wit, *one mare*, price £5, the property of Edward Kimpton, unlawfully, wilfully, maliciously and feloniously,

did kill, against the statute, &c." Here we also see that the pleader has not thought it necessary to describe the mode of killing, or the means or instrument used for that purpose. The defendant in this case was convicted; but because the evidence showed the animal killed was a colt, and did not show its sex, all the judges held, that it was not sufficient to support the charge of killing a mare. They also held, that it was necessary to specify in the indictment the particular species of cattle killed or maimed.

In the case of Taylor v. State, 6. Humph. (Tenn.) 285, the defendant was indicted under a statute of Tennessee, which provided, " that if any person shall wilfully or maliciously kill, or destroy, or wound the beast of another, he shall be fined not exceeding two hundred dollars, and be imprisoned not exceeding three months." The indictment, charged that Taylor, " on the 16th of December, 1844, in Davidson county, did wilfully and maliciously kill a cow, of the value of five dollars, the property of William Watts, contrary to law, &c." Upon this indictment, Taylor was tried and found guilty, sentenced to pay a fine and be imprisoned. He moved in arrest of judgment, which being overruled, he appealed to the Supreme Court. In the Supreme Court, it was insisted that the indictment was bad, because it was not alleged that the animal killed was a " beast;" but the court said the word " beast," here used, is a generic term, and includes all animals of that description. The indictment described the specific animal killed, and the animal so described is a " beast," and by necessary consequence the indictment charged that the defendant killed a " beast." The court affirmed this judgment. In this indictment, no mention is made of the means used to kill, nor of the manner or mode of using the means.

In Regina v. Tivey, (1 Denn. C. C. 64,) the prisoner was tried before Mr. Justice Patteson, at the Derby Winter Assizes, 1844, and convicted on an indictment charging him with unlawfully, maliciously and feloniously wounding a mare, the property of Richard Beaumont Child. This indict-

ment was under the statute 7 & 8 Geo. IV, ch. 30, § 16, before cited. The fact of wounding was clearly proved, but no evidence as to the motive of the prisoner. No malice was shown towards any one, and it did not appear that he knew to whom the mare belonged, or had any knowledge of the prosecutor, Richard Beaumont Child. The prisoner's counsel urged, that evidence of malice was necessary since 1 Vic. ch. 90; the learned Judge held that it was not, and his brother Judges, Denman, C. Justice, Pollock, C. B., Coleridge, Coltman, Rolfe, Erle, and Platt, concurred with Patteson. In Rex v. Salmon, (1 Russ. & Ry. C. C. p. 26,) it was held, that, in an indictment for setting fire to a hay-stack, under 9 Geo. I, ch. 22, it is no answer to the charge that the prisoner had no malice or spite to the owner of the stack. In the case of the State v. Jackson, (12 Iredell's Rep. 329,) was an indictment for malicious mischief. The court held the indictment bad, because it omitted the word "mischievously." This may be required by the statute. It is no authority to say that such a word is necessary under the statute for killing, maiming, or wounding cattle. Nor do we think, in such indictments, it is at all necessary either to charge express malice against the owner of the cattle, or to describe the manner, mode, and instrument with which the offence was perpetrated.

That the word "cattle" may be so used by our legislature as to exclude the idea of horses, mares, colts, &c., we will not pretend to say; but that when used as it is in this 57th sec. of art. 3d of our Criminal Code, it embraces horses, mares, colts, &c., we think can not be for a moment doubted. One remark more about the malice in these case and I will have done. In the case of Bromage and another v. Prosser, (4 Barn. & Cress. 247; 10 Eng. Com. Law, 321,) Bailey, J., in delivering the opinion of the court, said: "Malice in common acceptation means ill-will against a person, but in its legal sense it means a wrongful act done intentionally, without just cause or excuse. If I give a perfect stranger a blow likely to produce death, I do it *of malice*, because I do it intentionally and

without just cause or excuse. If I maim cattle without knowing whose they are—if I poison a fishery without knowing the owner, I do it of malice, because it is a wrongful act and done intentionally." It would be well to notice the distinction between the common acceptation of the term malice and the legal sense of the same.

In this case, we consider the indictment substantially good, and that the court below erred in sustaining the defendant's demurrer to it. The judgment of the circuit court is reversed, and this cause is remanded for further proceedings in accordance with this opinion. Judge Leonard concurring ; Judge Scott absent.