**STATE of Missouri, Respondent,**

v.

**Clyde HYLER, Appellant.**

**No. WD 46625.**

Missouri Court of Appeals, Western District.

July 27, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 1993.

Application to Transfer Denied Oct. 26, 1993.

---

Richard L. Colbert, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and BRECKENRIDGE and HANNA, JJ.

HANNA, Judge.

The defendant, Clyde Hyler, was convicted of six counts of delivery of a controlled substance, cocaine base, § 195.211, RSMo Supp. 1992, in the Circuit Court of Boone County, Missouri. The defendant was sentenced to five years imprisonment on Count I and fifteen years imprisonment on each of the remaining counts. The sentences for Counts I through V were run concurrently with each other but consecutively to Count VI, for a total term of imprisonment of thirty years.

In August 1990, Columbia police officer Lionel Prudhomme was assigned as an undercover narcotics officer and took up residence in a house on 4th Avenue in Columbia. The police department provided him with a house, an automobile and he used an assumed name. While working undercover, Officer Prudhomme met the defendant who was also known as "Sweet Pea." He first

met the defendant when he and Jerry Wilkins went to the defendant's residence. They ordered some "weight," which is a street description for either ⅛ or 1/16 ounce of crack cocaine. The defendant left and made a phone call. Upon return, the defendant told Wilkins he could get him an "eight-ball" (eighth ounce of cocaine) for $250 and Prudhomme "a 1/16" (one-sixteenth ounce of crack cocaine) for $150.

The defendant left in his car and returned fifteen minutes later and took Wilkins into the bathroom. When Wilkins came out, he instructed Prudhomme to go out to the car and bring the money for the crack. Officer Prudhomme got the money, turned it over to Wilkins and Wilkins went back into the bathroom. Later he came out and handed Officer Prudhomme change from the transaction and a "sixteenth."

Officer Prudhomme returned to his residence and did a field test on the substance Wilkins had given him. He determined that it was crack cocaine or what he called "cocaine base."

Officer Prudhommes next contact with the defendant occurred when he saw the defendant and his brother, Danny Hyler. The defendant came to Prudhomme's car and told him he had some "eight balls" and that they were going for $250. Prudhomme said he wanted to see one of the "eight balls" and the defendant went into the house. Prudhomme and Danny Hyler remained outside. When he told Danny Hyler that he was looking for an eight ball, Danny Hyler opened a paper and poured out several "rocks" and sold one to Prudhomme for $250. When Prudhomme contested the weight of the crack cocaine, the defendant came outside and assured Prudhomme that it was high quality crack cocaine and was solid throughout without any hollow areas. Prudhomme returned to his residence, performed a field test, and determined it was crack cocaine.

There were four more sales over the next few weeks involving the defendant, Officer Prudhomme and others. On each occasion Officer Prudhomme purchased an eight ball. These transactions resulted in the six counts of sale of controlled substances subsequently filed against the defendant. We need not detail the facts of each transaction as the sufficiency of the evidence is not questioned.

Officer Prudhomme was furnished with a small tape recorder which was kept sealed in his clothing during these transactions. The defense filed a motion in limine to keep the tapes from the juries consideration. The tapes were of poor quality so that neither the state nor the defendant could prepare an agreed transcription of their contents. They were admitted into evidence over the defendant's objection.

■ The defendant complains that the trial court committed plain error because the indictment did not contain all of the essential elements of "acting in concert" and thereby it was inadequate and deprived the court of jurisdiction. Plain error is established only when error is so substantial that, without correction, manifest injustice will result. Rule 29.12(b); *State v. Johnson*, 829 S.W.2d 630, 633 (Mo.App.1992).

The indictment contained six counts of delivering a cocaine base in violation of § 195.211. All six counts contained essentially the same language except that the dates of the transactions and the names of the individuals with whom the defendant acted were different. The general language used in each of the six counts was as follows:

The grand jurors of the County of Boone, State of Missouri, charge that the defendant, acting in concert,

[Counts I through VI] in violation of Section 195.211, RSMo, committed the class B felony of delivery of a controlled substance, punishable upon conviction under Section 558.011.1(2), RSMo, in that on or about the [date], in the County of Boone, State of Missouri, the defendant, acting in concert with [name] delivered cocaine base, a controlled substance to Lionel C. Prudhomme, knowingly or consciously disregarding a substantial and justifiable risk that it was a controlled substance.

The initial paragraph of the indictment charged the defendant with acting in concert and each count, separately, charged him with acting in concert with certain individuals

identified by name and, in one case, with an unknown individual who was identified by gender and race. The defendant maintains that the state should have alleged facts to inform him of the conduct that he was alleged to have committed when he acted in concert.

■ The test for the sufficiency of an indictment or an information is "whether it contains all the essential elements of the offense as set out in the statute [creating the offenses] and clearly advises defendant of facts constituting the offense." *State v. OConnell*, 726 S.W.2d 742, 746 (Mo. banc 1987) (*quoting State v. Brown*, 660 S.W.2d 694, 698 (Mo. banc 1983)). The purpose of an indictment is to inform the defendant of the charges against him so that he may prepare an adequate defense and to prevent retrial on the same charges in case of an acquittal. *Id.* In preparing the indictment, the state closely followed MACH–CR 25.04 (1990). The only variation from the pattern was the addition of language that the defendant was "acting in concert with" another individual in each count. The defendant claims that by adding this phrase the state made the indictment ambiguous because that phrase is generic. He cites *State v. Kesterson*, 403 S.W.2d 606 (Mo.1966) for the proposition that an indictment using generic terms to define the offense is not sufficiently particular to notify him of what he is to defend against. In *Kesterson*, the generic word, "deceit" came from the statute, unlike this case.

■ The indictment in this case, unlike the one used in *Kesterson*, was based on the form approved as satisfying the indictment requirements of Rule 23.01 by the Missouri Supreme Court. Rule 23.01(e) states: "All indictments or informations which are substantially consistent with the forms of indictments or informations which have been approved by this Court shall be deemed to comply with the requirements of this Rule 23.01(b)." The indictment in this case was based on the approved form MACH–CR 25.04 which satisfies the requirement of Rule 23.01(e). Because the indictment substantially complied with MACH–CR 25.04, and met the essential requirements of notification of the charge, it was not defective. *State v. Hutton*, 825 S.W.2d 883, 885 (Mo.App.1992). As long as the act charged falls within the statutory definition of the offense and the indictment informed the defendant of the charge against him, the details of the commission are generally unnecessary. *State v. Thompson*, 574 S.W.2d 432, 434 (Mo.App. 1977). The indictment was not defective in the use of the term "acting in concert."

■ The defendant raises one other matter under this point. He claims the courts instruction on Count I submitted a new and distinct offense from Count I of the indictment. He claims that the indictment charged that the offense occurred February 8 and the courts instruction submitted the date of February 9. The issue was not raised in the instruction conference at the trial court, nor was it raised in defendants motion for new trial. The state responds to the claimed error with a discussion of the variance between the indictment and the instruction and whether it was material and prejudicial. A cursory reading of the transcript reveals that the prosecuting attorney realized the error before trial and filed an information in lieu of indictment correcting the date to February 9. The defendant specifically waived any objection. Point denied.

■ The defendant filed a bill of particulars, requesting that the indictment set forth the specific acts or words spoken that formed the basis for the charge of acting in concert. He claims that the trial court erred when it overruled his motion for a bill of particulars because the indictment was lacking in details for him to prepare an adequate defense.

■ "The motion for a bill of particulars is addressed to the sound discretion of the trial court and its ruling thereon should not be disturbed in the absence of an abuse of such discretion." *State v. Cox*, 352 S.W.2d 665, 672 (Mo.1961); *State v. Hafeli*, 715 S.W.2d 524, 527 (Mo.App.1986). It is not the purpose of a bill of particulars to make the state reveal for the defendant the details of the evidence on which it seeks to establish its case. *State v. Raines*, 748 S.W.2d 865, 869 (Mo.App.1988).

At the pre-trial hearing on this motion, the defendants counsel admitted that the state had provided the defendant with all pertinent police reports, all the undercover tapes, and the defendant had deposed Officer Prudhomme. Only in the rare case are the discovery rules inadequate to enable the defendant to pinpoint the offense sufficiently to prepare a defense. *State v. Weiler*, 801 S.W.2d 417, 420 (Mo.App.1990), *cert. denied*, — U.S. —, 112 S.Ct. 295, 116 L.Ed.2d 240 (1991). With respect to the allegation that the defendant was acting in concert, the indictment informed the defendant of the individuals by name with whom he acted (except the individual who was otherwise identified by gender and race), and the date of the acts. This information, considered along with complete discovery, provided sufficient particulars to enable the defendant to adequately prepare his defense. The defendant is not entitled to evidentiary details of the crimes charged. *Raines*, 748 S.W.2d at 869.

■ The defendant next complains of plain error concerning the assistant prosecuting attorney's questions to the venire in that they were statements of the law and attempts to commit the members of the panel to a particular position. Rule 29.12(b) plain error review has been discussed in the previous point. Considering that the matter is before us under that standard of review, we find it unnecessary to set forth the many and laborious questions that the defendant has cited in his brief. To do so would unduly lengthen this opinion without any gainful benefits.

The trial court has considerable discretion in controlling the nature and extent of voir dire examination and this court will not disturb the trial courts exercise of discretion unless it is "manifestly abused." *State v. Hudson*, 815 S.W.2d 430, 432 (Mo.App.1991). The prosecutor's examination probed the venire to determine the existence of conceived prejudices that would prevent the jurors from following the court's instructions. The prosecutor employed the proper procedure for exploring whether members of the jury panel could follow the instructions they would be given. *See State v. White*, 699 S.W.2d 19, 21 (Mo.App.1985). We have carefully reviewed the questions and found no misstatement of the law or attempt to commit the jury panel members to a particular position. Point denied.

■ The defendant argues that the court erred when it allowed the state to introduce into evidence the tape recorded conversations of the drug transactions between Prudhomme and the defendant.

Our Supreme Court in *State v. Spica*, 389 S.W.2d 35, 44 (Mo.1965), *cert. denied*, 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966) set out the test that must be established in order to admit sound recordings: (1) a showing that the recording device was capable of taking testimony; (2) a showing that the operator of the sound recording device was competent; (3) establishment of the authenticity and correctness of the recording; (4) a showing that changes, additions, or deletions have not been made; (5) a showing of the manner of the preservation of the recording; (6) identification of the speakers; and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement. The test was approved in *State v. Wahby*, 775 S.W.2d 147 (Mo. banc 1989).

Officer Prudhomme testified how the mini recorder was used to record the conversation between him and the defendant, the type of recorder used, that he had listened to the tape and verified that it was an accurate recording of their conversations, that there were no changes, deletions, or additions on the tape, and the voices on the tape were his and the defendant, and finally, that there were no inducements made to obtain the statements of the defendant. These facts were testified to with respect to all of the recordings.

From the transcript, we discern that the trial court listened to the tapes and concluded that one tape had much that was garbled and not clearly audible. The court ruled that part of the tape that was not sufficiently audible would be of no assistance to the jury and sustained the defendant's objection to it. The other portion of that tape and the other tapes were admitted with the court's obser-

vation that they would be of value to the jury. The defendant objects on appeal that it was impermissible to offer only part of the tape because the inaudible part rendered the entire tape untrustworthy. The record clearly showed that the tape contained two distinct transactions from each other. Therefore, refusing to allow a part of the tape to be submitted to the jury did not render the entire tape unworthy. *See Spica,* 389 S.W.2d at 48. The trial court has broad discretion in determining the admissibility of evidence and its determination will not be disturbed on appeal absent a clear abuse of discretion. *Wahby,* 775 S.W.2d at 153. The court did not abuse its discretion in admitting a portion of the tape, which dealt with one separate incident. Point denied.

■ Finally, the defendant contends that it was error to commence all of the verdict director instructions with the following:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with him with the common purpose of committing that offense, or if, for the purpose of committing that offense he aids or encourages the other person in committing it.

The defendant argues that the language should have been given in one instruction only. Again, the defendant requests plain error review because no objection was registered at trial or in the post-conviction motion.

The defendant argues that the jury may have been adversely influenced by the constant repetition of the language of acting in concert. We disagree. Whether the court commences each instruction with this prefatory paragraph or sets it out in a separate instruction is within the discretion of the trial court. *See* Note on Use, 3(a) MAI–CR3d 304.04 (1987); *State v. Green,* 812 S.W.2d 779, 786–87 (Mo.App.1991). Point Denied.

Judgment Affirmed.

All concur.