**MEDICINE SHOPPE INTERNATIONAL, INC., Plaintiff/Respondent,**

v.

**Rachna MEHRA, Defendant/Appellant.**

No. 64765.

Missouri Court of Appeals, Eastern District, Division Two.

July 19, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 23, 1994.

W. Morris Taylor, William K. Meehan, W. Morris Taylor, P.C., Clayton, for appellant.

Stephen H. Rovak, Catherine Hope Johnson, Peper, Martin, Jensen, Maichel and Hetlage, St. Louis, for respondent.

KAROHL, Judge.

This case arises from an action alleging breach of contract (Count I) and suit on account (Count II). Rachna Mehra, (hereinafter Mehra) appeals a judgment in favor of Medicine Shoppe International, Inc., (hereinafter Medicine Shoppe) in the amount of $62,031.05 for license fees, inventory, and attorney fees. Mehra contends with regard to Count I, the trial court erred: (1) in admitting Exhibits 2 and 2A because they contained hearsay; and, (2) in awarding attorney fees. She also argues with regard to Count II, Medicine Shoppe failed to make a submissible case under a theory of suit on account. We affirm in part and reverse in part.

**FACTS**

Medicine Shoppe is a franchisor of retail pharmacies. Approximately 900 Medicine Shoppe pharmacies exist worldwide. In the summer of 1986, Mehra and her former husband, Subodh Mehra, first contacted Medicine Shoppe about the possibility of opening a Medicine Shoppe pharmacy. At the time, Mehra and her former husband were both physicians who actively practiced in St. Louis County. They were also the sole shareholders of Anjusha Enterprises, Ltd. (hereinafter Anjusha), a Missouri corporation formed for the purpose of acquiring and operating a Medicine Shoppe pharmacy.

On October 27, 1986, a license contract was signed by Medicine Shoppe as grantor, Anjusha as licensee, and Mehra and her former husband, individually and as shareholders of Anjusha. Mehra and her former husband guaranteed performance on behalf of Anjusha, when they assumed the following personal obligations:

The undersigned persons hereby represent to Grantor that they are all of the stockholders or partners of the above-named Licensee. In consideration of the grant by Grantor to Licensee as herein provided each of the undersigned hereby agree, jointly and severally, and for themselves, their heirs, legal representatives and assigns that they, and each of them, shall be firmly bound by all of the terms, provisions and conditions of the forgoing.

Medicine Shoppe granted Anjusha a license in South St. Louis County and allowed Anjusha to acquire "exclusive rights, licenses and privileges to use the MEDICINE SHOPPE System and the trade names, and trademarks and service marks ..." in the area. In exchange, Anjusha agreed to pay Medicine Shoppe license fees in connection with the operation of the pharmacy.

On December 9, 1987, Mehra transferred her rights, claim and interest in her stock in Anjusha to her former husband. However, Mehra never notified Medicine Shoppe she was withdrawing from the franchise, nor did she obtain a release from Medicine Shoppe. In the summer of 1988, Mehra's former husband opened the designated pharmacy for business in Oakville, Missouri. Although the license contract was signed on October 1986, the delay occurred because of problems in obtaining a location for the pharmacy. Mehra testified she was never involved in day-to-day operations or management of the pharmacy. Mehra's marriage was dissolved May 22, 1989. The Oakville pharmacy closed September, 1990.

On January 14, 1992, Medicine Shoppe filed a two-count petition against Anjusha, Mehra and her former husband for breach of contract for failure to pay license fees based on sales volume and suit on account for inventory purchases. Prior to trial, Medicine Shoppe dismissed its claim against Anjusha because it was insolvent. Medicine Shoppe also dropped its claim against former husband because his liability was discharged in bankruptcy. On June 24, 1993, Medicine Shoppe proceeded to trial against Mehra. Mehra did not file a cross-claim for indemnity or contribution against her former husband. On August 16, 1993, the trial court awarded judgment in favor of Medicine Shoppe calculated as follows:

| | |
|---|---|
| License Fees Due | $17,322.03 |
| Charges for Products/Services | $37,190.85 |
| Attorneys' Fees/Expenses | $ 7,068.17 |
| Post Trial Attorneys' Fees | $ 450.00 |
| TOTAL | $62,031.05 |

In reviewing a bench tried case, we are required to sustain the trial court's decision unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

## COUNT I—BREACH OF CONTRACT

Mehra contends the trial court should not have admitted Exhibits 2 and 2A because they consisted of hearsay and did not fall within the business records exception under § 490.680 RSMo 1986. These exhibits were offered on the issue of damages.

Exhibit 2A is a compilation of weekly sales reports reflecting gross receipts which were prepared by former husband on behalf of Anjusha and filed with Medicine Shoppe as required by the license contract. Mehra objected to the admission of Exhibit 2A on the ground of inadmissible hearsay because the employee who testified for Medicine Shoppe did not prepare the documents.

The license contract explicitly provides for license fees to be paid on a percentage rate of gross monthly sales of the pharmacy. It states:

In consideration of the issuance of this License and the services and covenants of Grantor set forth herein, Licensee shall pay Grantor the following:

**License Fees.** From the date Licensee commences operation, a monthly license fee of the following percentages of Licensee's gross receipts:

Opening through third month . . . . . . . . . . 2%
Fourth month through sixth month . . . . . 3%
Seventh month and thereafter during
the remaining terms of the Agreement. . 5%

Medicine Shoppe contends the truth of Exhibit 2A is irrelevant because it only offered the reports to show how the license fees were calculated based on information received from the licensee in accordance with a term of the license contract. The executive vice president of Medicine Shoppe identified Exhibit 2A and testified to the mode in which it calculated the license fees. Moreover, he claimed the licensee was required to prepare and supply reports on a weekly and monthly basis to calculate the license fees. The li-

cense contract requires licensee to prepare certain documents for Medicine Shoppe, such as,

a. A weekly report of daily transactions in sales and operations, and mail this report to Grantor on or before the first (1st) working day of each succeeding week;

b. A monthly accounts payable list and mail this report to Grantor for receipts by the fifth (5th) working day of each succeeding month;

c. A monthly report of cash disbursements and payroll and mail this report to Grantor for receipt by the fifth (5th) working day of each succeeding month; and

d. A monthly prescription pricing report which consists of pertinent information on consecutively filled prescriptions and mail this report to Grantor on or before the fifth (5th) working day of each successive month.

Mehra agreed to guarantee the performance of the quoted duties when she signed the license contract, including overseeing that Anjusha submitted weekly and monthly documents (Exhibit 2A) regarding sales of the pharmacy.

The accuracy of the calculated license fees as a percentage of volume of pharmaceutical sales would be a matter of weight of evidence, not admissibility. The trier of fact did not have to review the subject matter of the sales reports and accept the figures as true, since they were not offered to prove the truth of the matter asserted. The trial court admitted these sales reports only to explain how the license fees were computed. Therefore, Exhibit 2A was not inadmissible hearsay, and its admission was not error.

Medicine Shoppe's executive vice president identified Exhibit 2 as a computer-generated monthly document, prepared by Medicine Shoppe, summarizing the license fees based upon sales reports (Exhibit 2A) submitted by licensee. Mehra objected to the admission of Exhibit 2 on the grounds of hearsay and lack of foundation.

Hearsay is an out-of-court statement by someone not before the court which is offered to prove the truth of the matter

asserted. *Mattes v. Black & Veatch,* 828 S.W.2d 903, 907 (Mo.App.1992). A hearsay objection may be overcome by the business record exception. The business record exception provides that a record of an act, condition or event is competent evidence: (1) "if the custodian or other qualified witness testifies to its identity and the mode of its preparation"; (2) "if it was made in the regular course of business, at or near the time of the act, condition or event"; and, (3) "if in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." Section 490.680 RSMo 1986.

■ The executive vice president testified he did not have personal knowledge of Exhibit 2. However, the document was prepared in the ordinary course of business by a person at Medicine Shoppe with knowledge of the information recorded on it. The testimony of a witness as to the "mode of preparation" for documents admitted as business records need not be based on personal knowledge. *Rossomanno v. Laclede Cab Co.,* 328 S.W.2d 677, 683 (Mo. banc 1959); *Collet v. American National Stores, Inc.,* 708 S.W.2d 273, 277 (Mo.App.1986).

■ The witness also stated Exhibit 2 was prepared and stored in Medicine Shoppe's computer system in the ordinary course of business, near or at the time the individual license fees were due. Computer generated information, if relevant and material, is admissible in evidence, if it is shown that: (1) the business regularly employs electronic computer equipment to enter and store information; (2) the entries are made in the ordinary course of business, near the time of the events recorded; and, (3) the court is satisfied that the sources of information, the mode and time of preparation indicate trustworthiness, and hence justify admission. *Missouri Valley Walnut Company v. Snider,* 569 S.W.2d 324, 328 (Mo.App. 1978). The business records exception, § 490.680, allows the admission of evidence without the necessity of identifying, locating, and producing as witnesses the individuals who made each entry in the regular course of business. *Id.* at 328. In this case, the trial court properly admitted Exhibit 2 under the business record exception.

## COUNT I—ATTORNEY FEES

■ Mehra contends the trial court erred in ordering her to pay Medicine Shoppe's attorney fees since Medicine Shoppe failed to make a submissible case on Counts I & II. Attorney fees may be recovered as damages by contract or by statute. *Missouri Farmer Association, Inc. v. Barry,* 710 S.W.2d 923, 928 (Mo.App.1986). The license contract states,

> Grantor shall be entitled to receive its costs and expenses incurred in bringing or defending any action arising hereunder, such costs and expenses to include reasonable attorneys' fees.

Mehra agreed to guarantee the performance of the quoted duty on behalf of Anjusha when she signed the license contract. Therefore, the trial court did not err in finding Mehra responsible for all attorney fees incurred by Medicine Shoppe.

## COUNT II—SUIT ON ACCOUNT

■ Mehra contends Medicine Shoppe failed to make a submissible case against her with regard to Count II of Medicine Shoppe's petition, which alleged a suit on account. Medicine Shoppe claims that Mehra is liable for inventory purchases arising from the license contract. However, in Count II, it plead a suit on account without reference to the contract. A suit on open account means a suit in contract for each purchase transaction. *Coca–Cola Bottling Co. v. Groeper,* 691 S.W.2d 395, 397 (Mo.App. 1985). Plaintiff must prove defendant ordered and plaintiff delivered the goods or services. Plaintiff must also prove the agreed price was reasonable. *Taylor's Auto Part v. Mayo,* 807 S.W.2d 215, 216 (Mo.App. 1991).

Mehra argues Medicine Shoppe is bound by the cause of action it plead. Since Medicine Shoppe, at trial, did not prove the elements of suit of account as plead in its petition, that portion of the judgment should be vacated.

Medicine Shoppe did not dispute the fact it plead, but did not prove, a suit on account.

However, it now contends the pleadings may be amended to conform to the evidence admitted at trial, even when an amendment was not in fact made, citing *Condos v. Associated Transports, Inc.*, 453 S.W.2d 682, 690 (Mo. App.1970). In *Condos*, the defendant did not object to the introduction of evidence offered to prove matters not within the pleadings, thus, the pleadings were amending by implied consent. *Id.* at 690. Medicine Shoppe contends Mehra did not object to the introduction of the license contract, Medicine Shoppe's invoice dated September 30, 1990, and Medicine Shoppe's invoice dated May 31, 1993. Accordingly, it claims the trial court was authorized to consider Count II as a claim for breach of the license contract and enter judgment thereon.

Mehra responds that the implied consent rule does not apply, citing *Associate Engineering Company v. Webbe*, 795 S.W.2d 606, 610 (Mo.App.1990). The implied consent rule only applies when the evidence introduced at trial bears on a new issue and is not pertinent to issues already in the case. *Id.* at 610. Here, the license contract was admissible without amending the pleadings because it was probative on Count I. Although Mehra failed to object to the admission of the license contract, this would not constitute consent to an amendment of Count II. Mehra could not object to the introduction of the license contract and other evidence as outside the pleadings because it directly related to Count I. It would be improper to allow Medicine Shoppe to try an issue without giving full notice to opposing party. *Id.* at 610.[1]

We affirm the judgment of the trial court with respect to Count I in terms of the license fees due and attorney fees. We reverse with respect to Count II regarding charges for products and services.

CRANE, P.J., and CRAHAN, J., concur.

---

1. The parties have not addressed the legal issue that Count I was for breach of the license contract, and if Count II was also for breach of the same contract, plaintiff split its cause of action.