STATE of Missouri, Respondent,

v.

Daryl LARSON, Appellant.

No. WD 52211.

Missouri Court of Appeals,
Western District.

April 1, 1997.

Jerold L. Drake, Grant City, for appellant.

Dale K. Miller, Oregon, for respondent.

Before ULRICH, C.J., P.J., and HANNA and EDWIN H. SMITH, JJ.

ULRICH, Chief Judge, Presiding Judge.

Daryl Larson appeals his convictions of fifty counts of misdemeanor animal abuse, § 578.012, RSMo 1994, and fifty counts of misdemeanor failure to dispose of dead animals, §§ 269.020 and 269.220, RSMo 1994.

He asserts that the trial court erred in (1) denying his motion for a bill of particulars as to Counts 1 through 50, (2) determining that the search warrant authorizing the search of his property was valid, (3) failing to permit him to argue that the cause of adverse news reports of the affected animals was a biased news reporter, (4) permitting introduction of a report of the Sheriff's investigation as a business record exception of the hearsay rule, and (5) failing to instruct the jury to consider whether he was not guilty of Counts 51 through 100 because he was suffering from a mental disease or defect at the time of the offenses as contemplated by section 552.030, RSMo 1994. Dr. Larson was sentenced to a variety of penalties on Counts 1 through 51 including time in jail and fines totaling $34,000 on Counts 16 through 50. He was sentenced to a $200 fine on each of Counts 51 through 100 for a total of $10,000. The judgment of conviction as to Counts 51 through 100 is affirmed. The judgment of conviction regarding Counts 1 through 50 is reversed, and the case is remanded for a new trial.

**Facts**

Dr. Larson is a veterinarian and a farmer who owned and operated a hog operation in Holt County. He also practiced veterinary medicine five years before the start of his hog operation. In late July and early August 1995, the Holt County Sheriff's Department began receiving reports of stray hogs. Deputy Sheriff Felumb attempted to contact Dr. Larson on August 2, 1995, concerning the stray hogs. He was unsuccessful. The deputy sheriff then went to Dr. Larson's farm and, with the help of a neighbor, returned the stray hogs to Dr. Larson's property. The deputy sheriff observed that the hogs were emaciated. Later the same day, Dr. Larson, who was in the town of Wyoming, Iowa, was contacted, and he returned to his farm. He removed a truck load of hogs the following day.

More calls to the Sheriff's Department regarding stray hogs occurred on August 4, 1995, and based on the observations of the deputy sheriff who had observed Dr. Larson's farm on August 2, 1995, a warrant to search Dr. Larson's property was obtained.

That evening, a deputy sheriff and two veterinarians searched the property with flashlights. They observed bad flooring in parts of the farm building, and refuse from the disposal system was abundant. They described the odor as sickening. They observed the remains of approximately 250 dead hogs throughout the confinement areas. Live hogs displaying various stages of malnutrition were observed in the "finishing" barn. The veterinarians believed that none of the live hogs displayed any disease symptoms and concluded that starvation caused the death of the hogs. The three returned the following day to photograph and videotape the premises in daylight.

Dr. Larson was charged by information with fifty counts of Class A misdemeanor animal abuse in violation of section 578.012, RSMo 1994, and fifty counts of failure to properly dispose of dead animals in violation of sections 269.020 and 269.220, RSMo 1994.

Dr. Larson filed a motion for bill of particulars claiming that the information was deficient. Specifically, he asserted that each charge identified neither the acts of abuse nor the specific animal. As a result, Dr. Larson claimed prejudice in the preparation of his defense and the inability to prevent multiple prosecution for the charged offenses. The trial court denied Dr. Larson's motion. Following jury trial, Dr. Larson was convicted on all counts and sentenced. This appeal followed.

**I. Bill of Particulars Was Required**

■ In his first point on appeal, Dr. Larson claims that the trial court erred in denying his motion for bill of particulars. He argues that Counts 1 through 50 of the information, each of which charged him with animal abuse in violation of section 578.012, RSMo 1994, failed to inform him of the specific animal abused or the abusive act. Counts 1 through 50 were identical and read as follows:

Jerome Y. Biggs, Jr., Assistant Prosecuting Attorney within and for Holt County, in the State of Missouri, upon information and belief and upon his official oath, charges that the defendant, in violation of Section 578.012, RSMo, committed the

Class A Misdemeanor of animal abuse, punishable upon conviction under Sections 558.011.1 and 560.016.1, RSMo, in that between July 1[1] to August 4, 1995, in the County of Holt, State of Missouri, the defendant, having ownership or custody of swine knowingly failed to provide adequate care or adequate control of a pig or purposely or intentionally caused injury or suffering to said pig.

Dr. Larson contends that without a bill of particulars, he was unable to prepare a defense for Counts 1 through 50 or safeguard against multiple prosecutions for the same offenses.

■ An information must allege all elements of the crime charged. *State v. Fuller*, 753 S.W.2d 328, 331 (Mo.App.1988). Misdemeanor offenses, however, do not require the same strictness in charging as is required for felonies. *Id.* Generally, an information charging the misdemeanor offense in the language of the statute where the statute defines the offense is sufficient. *Id.* The information filed in this case tracks the language of the offended statute. Although an information or indictment contains all the essential elements of an offense identified in the statute, it must clearly apprise a defendant of the facts constituting the offense to enable the defendant to prepare a defense, to bar future prosecution for the same offense, and to permit the trial court to decide whether sufficient facts are alleged to support a conviction. *State v. Cunningham*, 863 S.W.2d 914, 919 (Mo.App. E.D.1993). Where an information alleges all essential facts constituting the offense, but fails to assert facts necessary for an accused's defense, the information is subject to a challenge by a bill of particulars. *State v. Dreiling*, 830 S.W.2d 521, 526 (Mo.App. W.D.1992). A bill of particulars clarifies the charging document. It prevents surprise and restricts the state to what is set forth in the bill. *State v. Moseley*, 735 S.W.2d 46, 48 n. 1 (Mo.App.1987). The bill of particulars is not intended to make the state reveal for the defendant the details of the evidence on which it seeks to establish its case. *State v. Hyler*, 861 S.W.2d 646, 649 (Mo.App. W.D.1993).

■ Denial of a motion for a bill of particulars will not be disturbed unless an abuse of discretion is shown. *State v. Cox*, 352 S.W.2d 665, 672 (Mo.1961). The trial court abuses that discretion when the denial of the motion results in the defendant's being insufficiently informed of the necessary factual details of the offense to prevent an adequate preparation of a defense. *State v. Anderson*, 384 S.W.2d 591, 598 (Mo. banc 1964).

The information is not fatally defective as to Counts 1 through 50.[2] While the information alleging the violation of animal abuse was minimally sufficient in stating Dr. Larson's alleged misconduct and his failure to prove "adequate care" for his hogs, each of the counts identified no specific "pig." Rather, the state simply alleged fifty times that the defendant, "having ownership or custody of *swine* knowingly failed to provide adequate care ... *of a pig* ... or caused suffering *to said pig*." [Emphasis added]. The jury instruction form required that the state "specify animal." Given an alleged total of one thousand swine that might have died or otherwise been abused on Dr. Larson's farm, the term "a pig" in each of Counts 1 through 50 to identify a single specific pig is inadequate.

The information in Counts 1 through 50 did not sufficiently apprise Dr. Larson of *which* hog—male, female, dead, alive, white, black, red, Hampshire, Yorkshire or Duroc— he was charged with having abused. Without providing some reasonable description identifying each hog allegedly abused, Dr. Larson would be subject to multiple prosecutions with no way to disprove that the State of Missouri had already litigated criminal charges against him for abusing a particular hog.

The limited guidance provided by existing case law regarding the specificity required in the charging document alleging misdemeanor animal abuse is inconsistent and ambiguous. Detailed description of the abused animal has

---

1. Later amended by the prosecuting attorney to "January 1."

2. Mr. Larson did not raise on appeal the issue that the information was deficient regarding Counts 51 through 100.

not always been required. A lesson presented seems to be that less description may be required if several abused animals are included in a single misdemeanor charge with a single penalty, but when a single abused animal among several is the basis for each misdemeanor count in a multiple count charging document, greater specificity describing the abused animal in each count is preferred. In *State v. Pruett*, 61 Mo.App. 156 (1895), abuse to eight animals is charged as a single offense with a single penalty and not as eight separate offenses. The information read as follows:

Now, at this day, comes W.D. Johnson, prosecuting attorney within and for Pulaski county, in the state aforesaid, and gives the court herein to be informed and understand that James Pruett, at the county of Pulaski and state aforesaid, on the first day of June 1893, did then and there willfully and maliciously and cruelly maim, wound, beat and torture to death *eight pigs, of the value of $1 each, and the aggregate value* of $8, the same being the personal property of one J.F. Mitchell, by striking and beating the said pigs to death with rocks, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state.

*Id.* at 157(Emphasis supplied). In a recently reported Missouri animal abuse case in which a single abused animal was the basis for a single charge, Count I of the information read in part as follows: "[T]he defendant, having ownership or custody of a *small horse, white and brown in color,* willfully failed to provide adequate care for said horse by not providing said horse with adequate food and water." *State v. Thompson*, 820 S.W.2d 591, 593 (Mo.App. E.D.1991)(Emphasis supplied).

A second observation is that in recent years more specificity is required in describing the abused animal. A 1908 multiple misdemeanor count information charging animal abuse asserted that the defendant "unlawfully and cruelly did maim, wound, and torture to death three hogs belonging to J.N. Taylor, by worrying said three hogs with dogs, and wounding to death the said three hogs with some blunt instrument of an unknown description, from the effect of which striking, beating, and wounding the hogs died." *State v. Prater*, 109 S.W. 1047, 130 Mo.App. 348 (1908). In a second count, the defendant was charged with substantially the same words. *Id.* The evidence disclosed that the defendant had killed ten hogs in the same manner. *Id.* In *State v. Hambleton*, 22 Mo. 452 (1856), the court held that an indictment that stated the defendant "did then and there unlawfully ... kill a certain horse beast, to-wit, one mare is particular and descriptive enough." *Id.* at 454. The *Hambleton* court also cited with approval *Rex v. Chalkey*, 1 Russ. & Ry. C.C. 258, however, which held that an indictment charging the defendant " 'with killing certain cattle' without stating what kind of cattle, would not be sufficient." *Id.* at 454.

Dr. Larson was charged in each of 50 counts with wilfully causing injury to "a pig." Each count of the information was identical to the other 49. The dissent asserts that the transcript reveals Dr. Larson was adequately informed "as to what pigs" he was charged with having abused. This assertion is tenuous considering the state's admission during trial that specific pigs had not been identified by the information. If a count minimally states an offense, a bill of particulars is the mechanism authorized to more specifically state the charge. The prosecuting attorney explicitly acknowledged in his closing argument that the state had not identified the pig abused in each count, and he asserted that the state was not required to do so:

The State is not required to place ID tags on animals that don't have any. Its not required to provide a specific picture or video of each animal alleged to have been abused. Because we have some, you have seen some. But you also heard an eye witness testimony as to hundreds of carcasses that were seen similar to the ones depicted in State's Exhibits 17 through 21 of which these are the examples.

The prosecutor argued that two hundred to one thousand unidentified pigs had been abused. He presented five pictures (State's Exhibits 17 through 21) of pig carcasses as representative examples of the claimed

abuse. The prosecutor's approach was that Dr. Larson was prosecuted with abusing fifty representative unidentified pigs of the larger group of unidentified pigs. The prosecutor was asserting that "one abused pig was as good as the next." The prosecutor's charging information attempted to subject Dr. Larson to a penalty for each of 50 claimed violations. Charges are not intended to serve as general examples. A criminal charge is a specific assertion of violation of a criminal statute that must be proved beyond a reasonable doubt. A principal purpose of a criminal charge is to inform the defendant of the specific charge.

Counts 1 through 50 of the information were not sufficiently detailed to apprise Dr. Larson of the animal referred to. Fundamental fairness requires a more detailed description of the pigs. The trial court, therefore, abused its discretion in not granting Dr. Larson's motion for a bill of particulars. The judgment of convictions as to Counts 1 through 50 is reversed, and the case is remanded to the Circuit Court for entry of the trial court's order directing the prosecuting attorney to file a bill of particulars more specifically describing the animal referred to in each of Counts 1 through 50 in accordance with this opinion and for a new trial on Counts 1 through 50.

## II. Evidence Obtained from the Search Warrant Was Valid

■ Dr. Larson's second point of error claims that the deputy sheriff's initial entry onto the premises on August 2, 1995, in order to notify Dr. Larson of his stray hogs was unlawful and, therefore, the subsequent search warrant based on the deputy sheriff's August 2nd observations was invalid.

■ The record reflects that the deputy sheriff observed malnourished hogs on Dr. Larson's farm from different vantage points before he entered onto Dr. Larson's farm. These observations were sufficient to form the basis for the subsequent search warrant. Even had they not been sufficient, however,

the deputy sheriff's entry onto the farm property for the purpose of notifying of Dr. Larson of his stray hogs was lawful, and he was properly on the land. Dead and malnourished hogs were visible to the deputy sheriff before and after he entered onto the property, and, therefore, the "plain view" doctrine is applicable. *State v. Salyer*, 884 S.W.2d 354, 357 (Mo.App. S.D.1994); *State v. Cochrane*, 678 S.W.2d 11, 13 (Mo.App.1984). The subsequent warrant authorizing the entries and searches was lawful and the trial court did not err in overruling Dr. Larson's motion to suppress the evidence obtained from the search warrant. The second point is denied.

## III. Closing Argument Was Not Improper

■ Dr. Larson asserts as his third point on appeal that the trial court erred in refusing to permit him to argue during closing argument that because Gary Silverblat was an animal rights activist, the news coverage the case received in the local media caused the jury to be biased against him.

■ The trial judge has wide discretion in controlling the scope of closing arguments. *State v. Sanders*, 660 S.W.2d 273, 275 (Mo. App.1983). The reviewing court is limited to determining whether the trial court abused its discretion as a matter of law. *Id.*

The trial court did not abuse its discretion in precluding Dr. Larson from arguing that the media attention given to the death of the animals was due to Gary Silverblat's interest in animal rights and his effort to present in the media the death of Dr. Larson's animals. No evidence of the jurors' inability to comply with the trial court's instructions and to render a verdict based on the evidence presented at trial was demonstrated. Mr. Silverblat did not testify and his motivation for encouraging media interest in the death of Dr. Larson's hogs was not an issue in the case.[3] Point III is denied.

---

3. During voir dire, inquiry was made about the venire having seen news coverage about the dead animals that were the basis for the charges. Mr. Larson does not complain that the voir dire

process was tainted, that the twelve jurors were improperly selected, or that the jurors failed to follow the court's instructions and decide the case on the evidence presented.

## IV. Deputy Sheriff's Investigative Report was Admissible

■ Dr. Larson claims as his fourth point that the trial court erred in admitting into evidence an investigative report (Exhibit 4) prepared by the Holt County Sheriff's Office. He claims the report was hearsay. The report was a summary of the field notes and logs prepared by Deputy Sheriff Kirby Felumb on August 3, 1995, in the course of his having been on Dr. Larson's property as he performed his official duties.

Deputy Sheriff Felumb testified at trial. He stated that the report of his field notes and time logs of entrance onto Dr. Larson's property was of observations and events on Dr. Larson's property during the investigation. He testified that the notes and logs were prepared at or near the time of the event recorded and in the normal course of business.

■ Hearsay is an out-of-court statement made by someone not before the court that is offered to prove the truth of the matter asserted. *Medicine Shoppe Int'l, Inc. v. Mehra*, 882 S.W.2d 709, 712 (Mo.App. E.D. 1994). Hearsay evidence is not admissible as evidence at trial absent exception. The business records exception to the hearsay rule provides that a record of an act, condition, or event is competent evidence:

(1) 'if the custodian or other qualified witness testifies to its identity and the mode of its preparation'; (2) 'if it was made in the regular course of business, at or near the time of the act, condition or event'; and, (3) 'if in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.'

*Id.* (quoting § 490.680, RSMo 1994). Each of the elements required by the business records exception to the hearsay rule for admission of records was satisfied in this case.

■ Although a document may be admissible under the business records exception to the hearsay rule, content of the document may be excluded on some other basis. Dr. Larson fails to specifically assert what items within the report should be excluded. He refers to two examples of statements within the report that assert Dr. Larson was contacted earlier by deputies and others about "the need to control his animals." This is insufficient to preserve the issue, but the items referred to do not prejudice Dr. Larson even had they been improperly admitted. To warrant reversal, improperly admitted evidence must have prejudiced the defendant. Unless the error materially affects the merits of the action, the judgment should not be reversed. *Bailey v. Valtec Hydraulics, Inc.*, 748 S.W.2d 805, 808 (Mo. App. E.D.1988). The trial court did not abuse its discretion. Point IV is denied.

## V. Instruction on Mental Disease Was Not Warranted

■ Dr. Larson's final point of appeal claims that the trial court erred in refusing to instruct the jury using MAI–CR 3d 306.02A regarding whether he had a mental disease or defect that made him incapable of knowing and appreciating the nature, quality, or wrongfulness of his conduct at the time of the alleged offenses to Counts 51 through 100. § 552.030.1. Dr. Larson claims he was physically unable to dispose of the dead carcasses or to arrange for someone else do it because he was depressed.

Section 269.020.1 states in pertinent part: "Every person owning or caring for any animal that has died from any cause shall dispose of the animal carcass within twenty-four hours after knowledge of such death,...." Section 269.020.1 requires that Dr. Larson properly dispose of the animal carcasses in some manner within twenty-four hours. Only after Dr. Larson had knowledge of the death of the pigs was Dr. Larson's duty to dispose triggered.

■ Dr. Larson does not claim he did not know about the deaths of the hogs. Neither does he claim that, because of mental disease or defect, he was incapable of knowing and appreciating the nature, quality, or wrongfulness of his failure to comply with the provisions of section 269.020. He claims only that his failure to act was caused from severe depression. A claim of diminished capacity must rest upon substantial evidence of mental disease or defect as defined by

section 552.010, et seq., and a trial court is required to give an instruction on mental disease or defect only upon the introduction of substantial evidence of lack of mental responsibility. *State v. Gill*, 806 S.W.2d 48, 50 (Mo.App. W.D.1991). Defendant must demonstrate two things in order for the defense of mental disease or defect to be available to him: (1) that he had a mental disease or defect; and (2) that as a result of the mental disease or defect he did not know or appreciate the nature, quality or wrongfulness of his conduct or was incapable of conforming his conduct to the requirements of law. *State v. Scott*, 841 S.W.2d 787, 790 (Mo.App.1992).

Dr. Michael Rosman, a Ph.D. clinical psychologist, testified by video deposition in favor of Dr. Larson. He administered a psychological test to Dr. Larson and evaluated his mental health following clinical interview, neuro-psychological examination, brief intelligence test, and review of records pertaining to Dr. Larson. He concluded that Dr. Larson exhibited major depression that affected his judgment and his decisions. He determined that Dr. Larson was oriented as to time, date and place.

The state offered a six page written mental health examination report of Dr. Rinter Kahn, M.D., a psychiatrist at the St. Joseph Mental Hospital, of his evaluation of Dr. Larson.

Dr. Larson's depression was not substantial evidence of a mental disease or defect that warranted giving the requested instruction concerning diminished capacity as defined by sections 552.010 and 552.030.1. Dr. Michael Rosman testified that Dr. Larson "lost the capacity during those times of excessive stress to make good decisions and he engaged in … avoidance of responsibilities in many instances." Dr. Rosman also testified that Dr. Larson exercised "poor judgment" or was "helpless to make good decisions." However, Dr. Rosman never attributed Dr. Larson's exercise of "poor judgment" or his inability to "make good decisions" to Dr. Larson's inability to know the wrongfulness of his acts or that it made him incapable of conforming his conduct to the requirements of law.

The evidence does not establish that a mental disease or defect caused Dr. Larson to be incapable of knowing and appreciating the nature, quality, or wrongfulness of his failure to comply with Section 269.020's provisions. The trial court did not err in refusing to submit the tendered instruction placing the issue of diminished capacity before the jury. Point V is denied.

The judgment of conviction as to Counts 51 through 100 is affirmed. The judgment of conviction regarding Counts 1 through 50 is reversed, and the case is remanded with directions that the prosecuting attorney file a bill of particulars further identifying the dead animal in each of Counts 1 through 50 and for a new trial on Counts 1 through 50.

HANNA, J., concurs.

EDWIN H. SMITH, J., concurs in part and files separate dissenting opinion as to Point I.

EDWIN H. SMITH, Judge, concurring and dissenting.

I concur in part and dissent in part. I concur in the majority opinion affirming appellant's convictions as to Counts 51—100, but dissent as to its opinion reversing his convictions as to Counts 1—50.

The majority holds that the trial court abused its discretion and erred in overruling appellant's motion for a bill of particulars in that the informations as to Counts 1—50 were inadequate in their description of the pigs alleged to have been abused in violation of § 578.012, resulting in appellant being unable to prepare his defense and being free from multiple prosecutions in violation of the constitutional guarantee against double jeopardy. Although I agree with the majority's analysis of the law, I disagree that the facts of this case require reversal as to Counts 1—50.

I would agree that the informations as to Counts 1—50 were neither artfully drawn nor models of compliance with the rules governing the drafting of misdemeanor informations. I would also agree that it would have been advisable for the trial court to have sustained appellant's motion for a bill of particulars. However, I would disagree as to

the prejudice found by the majority resulting from the lack of specificity in the description of the alleged abused pigs. *See State v. Hogan*, 748 S.W.2d 766, 770 (Mo.App.1988) (holding that "[a] defect does not invalidate an information unless it prejudices the substantial rights of the defendant").

It is well settled that "[a]s long as the act charged falls within the statutory definition of the offense and the indictment informed the defendant of the charge against him, the details of the commission are generally unnecessary." *State v. Hyler*, 861 S.W.2d 646, 649–50 (Mo.App.1993). Further, the law does not require that the specificity necessary to allow .a defendant to prepare his defense and to be free from multiple prosecutions comes from the charging instrument alone. *Id.* The test is whether the defendant is adequately advised of the charges under all the circumstances, including the discovery provided. *Id.*

Having reviewed the transcript, I am left with the firm impression that the appellant, under all the circumstances, was adequately advised prior to trial of the charges against him so as to allow him to prepare his defense and to be free from multiple prosecutions. My country-common-sense tells me that all involved understood, without further description of the pigs in the informations, what was being charged and as to what pigs. Appellant had a vigorous defense as to Counts 1—50, in which there were specific references to individual pigs. There did not appear to be the overwhelming confusion that appellant would ask us to believe existed by the failure of the trial court to grant the bill of particulars. Further, given the record, I fail to see how there is any likelihood that appellant would be subjected to multiple prosecutions as a result of the trial court's failure to sustain his motion for a bill of particulars.

I would find that the trial court did not abuse its discretion in overruling appellant's motion for a bill of particulars and would affirm his convictions as to Counts 1—50.